T.C. Memo. 2010-183

UNITED STATES TAX COURT

BILLY D. AND BETTY J. MCGAUGHY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16684-06.                    Filed August 11, 2010.

<u>Harris H. Barnes, III</u>, for petitioners.

<u>John F. Driscoll</u>, for respondent.

MEMORANDUM OPINION

RUWE, <u>Judge</u>:  This case is before the Court on respondent's
motion for summary judgment and petitioners' cross-motion for
summary judgment pursuant to Rule 121.[1]  The proceeding arises

---

[1]Unless otherwise indicated, all Rule references are to the
Tax Court Rules of Practice and Procedure, and all section
references are to the Internal Revenue Code as amended.

from a petition for judicial review of the Commissioner's failure to abate interest under section 6404. See also Rule 280. The issue for decision is whether respondent's determination not to abate interest with respect to petitioners' 1993 and 1994 Federal income tax liabilities was an abuse of discretion.

## Background

The record consists of the parties' pleadings, their respective cross-motions for summary judgment, and various responses, declarations, and memoranda in support of or opposition to the motions. At the time the petition was filed, petitioners resided in Mississippi.

Petitioners' 1993 and 1994 joint Federal income tax returns were filed on April 15, 1994 and 1995, respectively. Petitioners' 1993 and 1994 returns were selected for examination on June 6, 1996. No written communication by respondent was sent to petitioners with respect to either their 1993 or 1994 taxable year before that date.[2]

Betty J. McGaughy (Mrs. McGaughy) was the majority shareholder and controlling officer of Tel-Eye International, Inc. (Tel-Eye), a C corporation. In July 1996, and as a result

---

[2]In their cross-motion for summary judgment petitioners allege that they were first contacted by respondent on Mar. 5, 1996, when they received a notice of audit prepared by Agent Monica Jones. In his amended response, respondent has shown that the Mar. 5, 1996, written correspondence relates to Tel-Eye International, Inc.'s tax returns and not petitioners'.

of an ongoing civil examination of Tel-Eye's taxable periods ended September 30, 1993, and March 31, 1994, the Internal Revenue Service (IRS) Examination Division (ED) formally referred the examination for Tel-Eye's tax years ending September 30, 1993 and 1994, and petitioners' 1993 and 1994 taxable years to the IRS Criminal Investigation Division (CID) for additional investigation. During the criminal investigation all civil examination activity in regard to petitioners' 1993 and 1994 tax years was suspended.

Activity records indicate that from July 1996 until August 14, 2000, petitioners' 1993 and 1994 returns were under criminal investigation. In this regard, an IRS ED agent worked with a CID agent until criminal prosecution referrals were made by the IRS to the U.S. Department of Justice (DOJ) in June 2000 recommending the prosecution of Mrs. McGaughy for three section 7206(1) counts. On August 14, 2000, the DOJ determined that prosecution of the criminal charges against Mrs. McGaughy was inappropriate and declined to prosecute them.

From the date of the DOJ criminal declination letter, respondent took approximately 14 months to complete the civil examination for petitioners' 1993 and 1994 tax years. During the approximately 6-month period between August 14, 2000, and February 23, 2001, the DOJ gathered files in its possession and returned them to the IRS, the CID took appropriate steps to

formally close the criminal aspects of petitioners' case and made a recommendation of further action to a civil fraud coordinator, the civil fraud coordinator reviewed the information received and determined that a civil fraud examination would be appropriate, and the case was returned to the examination group for assignment to a revenue agent. The civil matter was assigned on February 23, 2001, to Revenue Agent John Lockley, who began work on petitioners' case on February 26, 2001. Mr. Lockley was engaged in meetings with petitioners' representatives, coordinated development of the case with IRS officials, and gathered and analyzed relevant information. Mr. Lockley performed more than 123 hours of work on petitioners' case until it was administratively closed in November 2001, when Mr. Lockley sent petitioners' case to the review staff for issuance of a notice of deficiency.

In January 2002, approximately 2 months after Mr. Lockely sent petitioners' case to the review staff, the review staff completed their review of petitioners' case and prepared a notice of deficiency. The notice of deficiency was then forwarded to the Office of Chief Counsel in Birmingham, Alabama, for approval of the assertion of a civil fraud penalty. By March 7, 2002, the Birmingham, Alabama, Office of Chief Counsel approved the assertion of the civil fraud penalty and returned the case to the review staff for issuance of the notice of deficiency. On April

4, 2002, respondent issued a notice of deficiency to petitioners in regard to their 1993 and 1994 tax years.

On June 13, 2002, petitioners filed a petition with this Court at docket No. 9985-02 contesting the notice of deficiency issued with respect to their 1993 and 1994 tax years. On February 13, 2003, a decision was entered wherein it was determined that petitioners owed deficiencies and section 6663 penalties for tax years 1993 and 1994. On April 3, 2003, payment credits were applied to fully satisfy petitioners' account with the IRS. No additional interest accrued after the application of the credits.

On or about May 26, 2004, petitioners filed separate Forms 843, Claim for Refund and Request for Abatement, with the Internal Revenue Service (IRS) requesting abatements of interest of $38,547.96 for 1993 and $15,958.01 for 1994.

On the basis of the facts set forth in the declaration attached to the motion for summary judgment, the dates relevant to petitioners' request for review of the Commissioner's failure to abate interest are as follows.

A. From April 15, 1994, to June 6, 1996.--April 15, 1994, is the date petitioners filed their 1993 Federal income tax return. June 6, 1996, is the date that the 1993 return was selected by respondent for examination. (The period before the first written contact.)

B. From April 15, 1995, to June 6, 1996.--April 15, 1995, is the date petitioners filed their 1994 Federal income tax return. June 6, 1996, is the

date that the 1994 return was selected by respondent for examination. (The period before the first written contact.)

C. From July 1996 to August 14, 2000.--In July 1996 petitioners' 1993 and 1994 returns were initially referred for criminal investigation and the criminal aspects of the investigation were not closed until August 14, 2000. (The period during the criminal investigation.)

D. From August 14, 2000, to November 2001.--On August 14, 2000, the DOJ issued a letter formally declining to prosecute Mrs. McGaughy. In November 2001 respondent's examining agent completed the examination for petitioners' 1993 and 1994 tax years with a referral to the relevant review staff for the issuance of a notice of deficiency.

E. From November 2001 to April 4, 2002.--April 4, 2002, is the date of issuance of the notice of deficiency.

F. From April 4, 2002, to April 3, 2003.--April 3, 2003, is the date after which no further interest accrued because payments and credits were applied to fully satisfy petitioners' account.

By letter dated October 21, 2004, the IRS disallowed petitioners' claims for interest abatement and advised them of the procedure for requesting reconsideration of the determination with the IRS Office of Appeals. On November 11, 2004, petitioners responded with a request for reconsideration.

In late July 2005 respondent's Appeals Officer Gayla Owens was assigned to review, consider, and make a determination regarding petitioners' request for reconsideration. Appeals Officer Owens gathered information and records, held a conference with petitioners' representative, reviewed available information

and records, and prepared a final determination letter.  On February 23, 2006, a Full Disallowance-Final Determination letter was issued to petitioners on the grounds that no error or delay relating to ministerial acts merited abatement of interest.

## Discussion

### I.  Summary Judgment

Rule 121(a) permits a party to move "for a summary adjudication in the moving party's favor upon all or any part of the legal issues in controversy."  Rule 121(b) directs that a decision on such a motion shall be rendered "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law."  The moving party bears the burden of demonstrating that no genuine issue of material fact exists and that he or she is entitled to judgment as a matter of law.  Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).  Facts are viewed in the light most favorable to the nonmoving party.  Id.  When a motion for summary judgment has been properly made and supported by the moving party, the opposing party may not rest upon mere allegations or denials contained in that party's pleadings but must by affidavits or otherwise set forth specific

facts showing that there is a genuine issue for trial.  Rule 121(d).

II.  Abatement of Interest

A.  Section 6404

Section 6404(e), as in effect for the years at issue, provided, in pertinent part, as follows:

> SEC. 6404(e).  Assessments of Interest Attributable to Errors and Delays by Internal Revenue Service.--
>
>> (1) In general.--In the case of any assessment of interest on--
>>
>>> (A) any deficiency attributable in whole or in part to any error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial act, or
>>>
>>> (B) any payment of any tax described in section 6212(a) to the extent that any error or delay in such payment is attributable to such officer or employee being erroneous or dilatory in performing a ministerial act,
>>
>> the Secretary may abate the assessment of all or any part of such interest for any period.  For purposes of the preceding sentence, an error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment.[3]

---

[3]In 1996 sec. 6404(e) was amended by the Taxpayer Bill of Rights 2 (TBOR 2), Pub. L. 104-168, sec. 301, 110 Stat. 1457 (1996), to permit abatement with respect to "unreasonable" error or delay in performing a "ministerial or managerial" act.  The amendment is effective for tax years beginning after July 30,

(continued...)

For purposes of section 6404(e), the term "ministerial act" is defined as "a procedural or mechanical act that does not involve the exercise of judgment or discretion, and that occurs during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place." Sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).[4] "A decision concerning the proper application of federal tax law (or other federal or state law) is not a ministerial act." Id.

Section 6404(h)(1) provides the Tax Court with jurisdiction to review denials of requests for abatement of interest under an abuse of discretion standard.[5] An action constitutes an abuse of

---

[3](...continued)
1996, and is thus inapplicable to the instant case. See Woodral v. Commissioner, 112 T.C. 19, 25 n.8 (1999).

[4]Temporary regulations are entitled to the same weight as final regulations. Peterson Marital Trust v. Commissioner, 102 T.C. 790, 797 (1994), affd. 78 F.3d 795 (2d Cir. 1996). Final regulations were promulgated under sec. 6404 after the years at issue and contain a definition of "ministerial act" that does not differ from that set forth in the temporary regulations. Sec. 301.6404-2(b)(2), Proced. & Admin. Regs.

[5]The provision for Tax Court review of interest abatement determinations was enacted as sec. 6404(g). TBOR 2 sec. 302(a), 110 Stat. 1457. The provision was then redesignated after the years at issue, first as sec. 6404(i) by the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, secs. 3305(a), 3309(a), 112 Stat. 743, 745, and then as sec. 6404(h) by the Victims of Terrorism Tax Relief Act of 2001, Pub. L. 107-134, sec. 112(d)(1)(B), 115 Stat. 2435 (2002). The
(continued...)

discretion if performed in a manner that is arbitrary, capricious, or without sound basis in fact or law.  Woodral v. Commissioner, 112 T.C. 19, 23 (1999).  "Congress originally intended by section 6404(e) to sanction abatement of interest only where failure to do so 'would be widely perceived as grossly unfair', not to provide a remedy enabling taxpayers 'routinely to avoid payment of interest'."  Matthews v. Commissioner, T.C. Memo. 2008-126 (quoting H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844, and S. Rept. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208).

B.  Abatement for Periods Before First Contact

The flush language of section 6404(e)(1) expressly limits the periods for which abatement under that provision is available, providing that "an error or delay shall be taken into account only * * * after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment."  This restriction has been the subject of repeated judicial interpretation and, without exception, applied in instances where taxpayers have sought abatement for a period preceding written notification from the IRS.  Matthews v. Commissioner, supra (citing Krugman v. Commissioner, 112 T.C.

_____

[5](...continued)
provision as enacted and redesignated applies to requests for abatement after July 30, 1996.  TBOR 2 sec. 302(b), 110 Stat. 1458.  To avoid confusion, references herein will be to the current designation.

230, 239 (1999), <u>Hawksley v. Commissioner</u>, T.C. Memo. 2000-354, <u>Banat v. Commissioner</u>, T.C. Memo. 2000-141, affd. 5 Fed Appx. 36 (2d Cir. 2001), and <u>Nerad v. Commissioner</u>, T.C. Memo. 1999-376).

Congressional pronouncements and action both at the time of enactment of section 6404(e) and upon amendment of section 6404 after the years at issue strongly buttress adherence to the plain meaning of the text.  <u>Matthews v. Commissioner</u>, <u>supra</u>.  The legislative history accompanying the 1986 enactment of section 6404(e) notes that section 6404(e)(1) "does not therefore permit the abatement of interest for the period of time between the date the taxpayer files a return and the date the IRS commences an audit, regardless of the length of that time period."  H. Rept. 99-426, <u>supra</u> at 844, 1986-3 C.B. (Vol. 2) at 844; S. Rept. 99-313, <u>supra</u> at 208, 1986-3 C.B. (Vol. 3) at 208.

Petitioners acknowledge the timing restrictions in the flush language of section 6404(e)(1), as well as the judicial and legislative authorities cited above.  Petitioners contend, however, that the strict interpretation signaled by the statute must be balanced against, and moderated by, the statement contained in the legislative history and often repeated in case law that Congress did "not intend that this provision be used routinely to avoid payment of interest; rather, it intends that the provision be utilized in instances where failure to abate interest would be widely perceived as grossly unfair."  H. Rept.

99-426, supra at 844, 1986-3 C.B. (Vol. 2) at 844; S. Rept. 99-313, supra at 208, 1986-3 C.B. (Vol. 3) at 208. Petitioners maintain that, taking into account both clauses of the foregoing statement:

> it is obvious that a "grossly unfair" standard must be considered in evaluating each unique set of facts and circumstances. In other words, the statute should be interpreted based on strict construction of the language regarding dates, amounts, etc.; however, this strict interpretation is limited to producing an equitable result that is not "grossly unfair."

Petitioners contend that the "notion of limiting the strict construction of I.R.C. § 6404 with a subjective equitable standard ('grossly unfair') is also reflected in an evolving policy trend of both the IRS and Congress." In support petitioners cite various revenue procedures and statutory enactments.

Petitioners argue that the "assessment of interest * * * for a period of over nine (9) years, clearly runs contrary to the trend set forth by both the IRS and Congress." Petitioners conclude:

> In the present matter, the assessment of compound interest for such a long period of time clearly defeats any notion of fair play and runs contrary to the evolving policy demonstrated by the IRS and Congress. Such "grossly unfair" acts are the limiting standard to which Congress was clearly referring in H. Rept. 99-426, at 844 (1985). Furthermore, this case far exceeds the scope of "routine" in consideration of the abatement of interest.

> The present case sets forth unique circumstances where, in lieu of the trend enhancing the Petitioners'

ability to eliminate and/or minimize interest charges, upholding the interest charges against the Petitioners would produce a result that is "grossly unfair" and in direct conflict with the application of the statue as intended by Congress.  * * *

In Matthews v. Commissioner, supra, this Court disagreed with a similar argument that a failure to abate interest would be "grossly unfair", stating:

> We disagree for several reasons.  First are the fundamental and closely related tenets of statutory construction that (1) a statute is to be interpreted so as to give effect to its plain and ordinary meaning unless to do so would produce an absurd or futile result, and (2) a statute clear and unambiguous on its face must be regarded as conclusive absent an unequivocal expression of legislative intent to the contrary.  E.g., Am. Tobacco Co. v. Patterson, 456 U.S. 63, 68 (1982); United States v. Am. Trucking Associations, Inc., 310 U.S. 534, 543-544 (1940); Fla. Hosp. Trust Fund v. Commissioner, 103 T.C. 140, 152 (1994), affd. 71 F.3d 808 (11th Cir. 1996).  In the instant case, the text in issue is a brief statement of temporal limitation, a relatively routine feature of many taxing statutes.  We are hard pressed to see any absurdity, futility, or ambiguity that would permit the text of the statute to be overridden by legislative history, especially by the legislative expression on which petitioners rely, which falls far short of an unequivocal repudiation of the statutory language. Rather, we believe that the two would appear to reflect a harmony of purpose.
>
> Although petitioners attempt to characterize the "grossly unfair" clause as a liberalization, the restrictive nature of the language would seem more rationally to be interpreted as reiterating the general narrowness of the relief afforded by the statute.  In the legislative history, the "grossly unfair" clause is followed immediately by statements reprising specific limits imposed by section 6404(e)(1) on the period for which relief may be available, including the rule of IRS contact.  See H. Rept. 99-426, supra at 844, 1986-3 C.B. (Vol. 2) at 844; S. Rept. 99-313, supra at 208, 1986-3 C.B. (Vol. 3) at 208.  Likewise, the clause is

immediately preceded by the statement cautioning against routine use to avoid payment.  In that configuration, we find it particularly difficult to read the "grossly unfair" clause in the legislative history as an exception arising from the midst of what is otherwise a description of the narrowness of the remedy.

Petitioners have added nothing to the taxpayers' argument in Matthews v. Commissioner, T.C. Memo. 2008-126, that persuades us to reach a contrary result.  Accordingly, with respect to each of the tax years at issue, petitioners are not entitled to an abatement of interest for any period before the first written IRS contact (June 6, 1996) regarding liabilities for that year.

C.  Abatement During Criminal Investigation

The parties agree that petitioners' 1993 and 1994 tax years were referred to the IRS's CID in July 1996 and that a criminal investigation was ongoing until August 14, 2000.

Courts have long recognized the general policy within the IRS to suspend resolution of a civil examination pending completion of a criminal examination.  See, e.g., Badaracco v. Commissioner, 464 U.S. 386, 399 (1984); United States v. LaSalle Natl. Bank, 437 U.S. 298, 311-313 (1978); Matthews v. Commissioner, supra.  In Badaracco v. Commissioner, supra at 399, the Supreme Court stated:  "As a practical matter, therefore, the Commissioner frequently is forced to place a civil audit in abeyance when a criminal prosecution is recommended."

While a tax fraud investigation comprises both civil and criminal aspects, the criminal aspects dominate insofar as the investigation is controlled by the IRS CID. Taylor v. Commissioner, 113 T.C. 206, 211-212 (1999), affd. 9 Fed. Appx. 700 (9th Cir. 2001); Gorgie v. Commissioner, T.C. Memo. 2000-80. "Such a policy is intended to avoid the conflicts between civil and criminal discovery rules, the issues related to witness testimony and self-incrimination, and the problems of inherent confusion that could result if civil and criminal proceedings were allowed to take place concurrently." Matthews v. Commissioner, supra (citing Taylor v. Commissioner, supra at 212).

The foregoing and related considerations must be weighed and applied by the IRS in deciding how to proceed. Taylor v. Commissioner, supra at 212-213. In Taylor v. Commissioner, supra at 213, this Court explained: "The timing of the decision to defer the civil proceedings until resolution of the criminal aspects does not detract from the fact that the exercise of judgment is required in making such a decision." Such a decision is not "considered a 'ministerial act.'" Id.; Hanks v. Commissioner, T.C. Memo. 2001-319; Gorgie v. Commissioner, supra.

Although petitioners acknowledge and do not appear to raise any direct challenge to the above rule, they posit "that while the decision to suspend civil activity in itself may not be a

ministerial duty, actions prior to and subsequent to the making of the actual decision may be defined as ministerial." We disagree with their argument as applied to the circumstances of this case. See Gorgie v. Commissioner, supra ("The time spent investigating whether to impose civil or criminal fraud penalties, regardless of petitioners' guilt or innocence, is not a ground under section 6404(e) that would allow respondent to abate interest.").

Accordingly, we conclude that petitioners are not entitled to interest abatement for the period during which they were under criminal investigation.

D.  Abatement for Periods From August 14, 2000, to April 3, 2003

Petitioners acknowledge and cite relevant judicial authority that the mere passage of time does not establish error or delay in performance of a ministerial act. Petitioners' primary argument for relief, however, mirrors the argument made by the taxpayers and rejected by this Court in Matthews v. Commissioner, supra. In their cross-motion for summary judgment petitioners quote extensively from provisions of the Internal Revenue Manual and express their position as follows:

> Since the IRS has produced a number of records that are vague, uninformative, and fail to comply with its own procedures, the Petitioners have been unable to specifically allege whether specific ministerial errors or acts actually occurred. Due to the IRS's failure to provide detailed records that would allow Petitioners to make such evaluation, Petitioners claim that they

are entitled, as a matter of law, to have such acts
deemed favorably to the Petitioners, and regarded by
the Court as being ministerial in nature.  The IRS has
the burden to follow its own procedures and the law.
Otherwise, the presumption must be that the IRS did not
follow its own procedures and the law.

It is a well-settled principle that the Internal Revenue
Manual does not have the force of law, is not binding on the IRS,
and confers no rights on taxpayers.  Matthews v. Commissioner,
supra (citing Fargo v. Commissioner, 447 F.3d 706, 713 (9th Cir.
2006), affg. T.C. Memo. 2004-13, Carlson v. United States, 126
F.3d 915, 922 (7th Cir. 1997), Tavano v. Commissioner, 986 F.2d
1389, 1390 (11th Cir. 1993), affg. T.C. Memo. 1991-237, and Marks
v. Commissioner, 947 F.2d 983, 986 n.1 (D.C. Cir. 1991), affg.
T.C. Memo. 1989-575).  Furthermore, even if some duty of
documentation incumbent upon the IRS could be inferred from the
Internal Revenue Manual or other pertinent law, petitioners'
contentions as applied to the instant case fail under the
circumstances.

### 1.  Period From August 14, 2000, to November 2001

By letter dated August 14, 2000, the DOJ formally declined
to prosecute Mrs. McGaughy in regard to petitioners' 1993 and
1994 Federal income tax years.  During the approximately 6-month
period between August 14, 2000, and February 23, 2001, the DOJ
gathered files in its possession and returned them to the IRS,
the CID took appropriate steps to formally close the criminal
aspects of petitioners' case and made a recommendation of further

action to a civil fraud coordinator, the civil fraud coordinator reviewed the information received and determined that a civil fraud examination would be appropriate, and the case was returned to the examination group for assignment to a revenue agent. The revenue agent's activity record reveals consistent activity including meetings with petitioners' representatives, meeting and coordinating development of the case with IRS officials, and gathering and analyzing relevant information. The revenue agent performed more than 123 hours of work on petitioners' case until it was administratively closed in November 2001, at which time the revenue agent sent petitioners' case to the review staff for issuance of a notice of deficiency.

Petitioners have not pointed to any specific ministerial error or delay during this period, and we perceive nothing during this period that would suggest that ministerial errors or delays occurred.

### 2. Period From November 2001 to April 4, 2002

In January 2002, approximately 2 months after the revenue agent sent petitioners' case to the review staff, the review staff completed their review of petitioners' case and prepared a notice of deficiency. The notice of deficiency was then forwarded to the Office of Chief Counsel in Birmingham, Alabama, for approval of the assertion of a civil fraud penalty. By March 7, 2002, the Birmingham, Alabama, Office of Chief Counsel

approved the assertion of the civil fraud penalty and returned the case to the review staff for issuance of the notice of deficiency. On April 4, 2002, respondent issued to petitioners a notice of deficiency in regard to their 1993 and 1994 tax years.

Petitioners have likewise failed to identify or allege any specific ministerial error or delay during this period, and we perceive nothing during this period that would suggest that ministerial error or delay occurred.

### 3. Period From April 4, 2002, to April 3, 2003

On June 13, 2002, petitioners filed a petition with this Court at docket No. 9985-02 contesting the notice of deficiency issued with respect to petitioners' 1993 and 1994 tax years. On February 13, 2003, a stipulated decision was entered wherein it was determined that petitioners owed deficiencies and section 6663 penalties for tax years 1993 and 1994. On April 3, 2003, payment credits were applied to fully satisfy petitioners' account with the IRS. No additional interest accrued after the application of the credits.

Petitioners have failed to identify any specific ministerial error or delay during this period, and we perceive nothing during this period that would suggest that a ministerial error or delay occurred.

E.  Conclusion

We conclude that respondent committed no abuse of discretion in determining that petitioners were not entitled to abatement of interest pursuant to section 6404(e)(1) with respect to either of the years at issue.  Respondent's motion for summary judgment will be granted, and petitioners' cross-motion for summary judgment will be denied.

To reflect the foregoing,

An appropriate order and decision for respondent will be entered.