GEORGE THOMPSON, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10897–09L.          Filed March 4, 2013.

P filed a petition for review pursuant to I.R.C. sec. 6330 in response to R's determination to proceed with collection. P sought a collection alternative of a partial payment install-ment agreement with a monthly payment of $3,000. The Internal Revenue Manual provides guidance for determining how much a taxpayer should be able to pay in a partial pay-ment installment agreement and how much should be set aside for the taxpayer's necessary living expenses. The Internal Revenue Manual provides that in a partial payment installment agreement a taxpayer is allowed only necessary expenses; conditional expenses are not allowed. In computing the necessary expenses, P included tithing to his Church and expenses for his children's college. P claims that both tithing and his children's college expenses are necessary expenses. *Held*: It was not an abuse of discretion for R to classify P's tithing as a conditional expense under the Internal Revenue Manual. *Held*, *further*, classifying P's tithing as a conditional expense does not violate P's rights under the Free Exercise Clause of the First Amendment. *Held*, *further*, classifying P's tithing as a conditional expense was not a violation of the Religious Freedom Restoration Act of 1993. *Held*, *further*, it was not an abuse of discretion for R to classify P's children's college expenses as a conditional expense under the Internal Revenue Manual. *Held*, *further*, R's determination is sus-tained.

*Robert S. Schwartz*, *Peter M. Burke*, and *Monica Vir*, for petitioner.

*Carrie L. Kleinjan* and *Kirsten E. Brimer*, for respondent.

RUWE, *Judge*: This proceeding was commenced in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330.[1] The issues for decision are

---

[1] All section references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules

Continued

whether it was an abuse of discretion for the settlement officer to reject petitioner's contention that: (1) petitioner's monthly tithing to his Church and (2) his monthly payments for his children's college expenses should be excluded from the monthly amount available to satisfy his unpaid tax liabilities. Petitioner contends that respondent's failure to allow for his tithing obligations violates the Free Exercise Clause of the First Amendment to the Constitution and the Religious Freedom Restoration Act of 1993, Pub. L. No. 103–141, sec. 3, 107 Stat. 1488 (current version at 42 U.S.C. sec. 2000bb–1(a) and (b) (2006)).

### FINDINGS OF FACT

At the time the petition was filed, petitioner resided in New Jersey. Petitioner is the president of Compliance Innovations, Inc., which is owned by a trust. Petitioner and his wife are the trustees.

Petitioner has been a member of the Church of Jesus Christ of Latter-Day Saints (Church) his entire life and has regularly contributed 10% of his monthly income to the Church. Petitioner is actively involved in the Church and holds a position as a shift coordinator in the Church's Manhattan Temple. Additionally, petitioner is a stake scouting coordinator for the Church and is responsible for overseeing six scout troops in different congregations in New Jersey. Petitioner was not compensated by the Church for his shift coordinator or stake scouting coordinator responsibilities.

At the time petitioner submitted his Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals, he was married and had five children. At that time, petitioner had a child enrolled in Brigham Young University and a child enrolled in Sacred Heart University.

*CDP Period Section 6672 Penalties*

On January 7, 2008, respondent assessed trust fund recovery penalties pursuant to section 6672 against petitioner for employment tax liabilities owed by Compliance Innovations, Inc., of $45,615.67, $23,091.60, $37,269.90, and

of Practice and Procedure, unless otherwise indicated.

$45,217.77 for the periods ending December 31, 2004, June 30 and September 30, 2005, and June 30, 2007.[2] We will refer to these tax penalties as petitioner's CDP period tax penalties.

Respondent sent petitioner a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, dated June 4, 2008, advising him that respondent intended to levy to collect the unpaid CDP period tax penalties and that petitioner could request a hearing with respondent's Office of Appeals. Respondent sent petitioner a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320, dated June 19, 2008, advising him that a notice of Federal tax lien (NFTL) had been filed with respect to his unpaid CDP period tax penalties and that he could request a hearing with respondent's Office of Appeals. Petitioner timely submitted Forms 12153, Request for a Collection Due Process or Equivalent Hearing, in which he did not contest the amounts of the underlying CDP period tax penalties. By letter dated August 26, 2008, respondent's settlement officer[3] acknowledged receipt of petitioner's collection due process (CDP) hearing request.

*Petitioner's Non-CDP Period Tax Liabilities*

Respondent had previously assessed trust fund recovery penalties pursuant to section 6672 against petitioner for employment tax liabilities owed by Compliance Innovations, Inc., for the periods ending December 31, 1999, and June 30 and September 30, 2000. Additionally, respondent had previously assessed income tax liabilities owed by petitioner and his wife for the taxable years 1992, 1995, 1996, 1999, and

---

[2] Under sec. 6672 "the officers or employees of the employer responsible for effectuating the collection and payment of trust-fund taxes who willfully fail to do so are made personally liable to a 'penalty' equal to the amount of the delinquent taxes." *Slodov v. United States*, 436 U.S. 238, 244–245 (1978). The taxes withheld from employees and collected by employers are commonly referred to as "trust-fund taxes" because the Code provides that the collected taxes are deemed to be a "special fund in trust for the United States." Sec. 7501(a). The purpose of sec. 6672 is to assure payment of the taxes collected by employers. *Slodov v. United States*, 436 U.S. at 248.

[3] Settlement officer is a position within respondent's Office of Appeals.

2000.[4] These penalties and taxes were unpaid. Petitioner had previously entered into a partial payment installment agreement with respondent, on or about August 8, 2006, for payment of the non-CDP period tax liabilities and penalties. Subsequently, respondent determined that petitioner had defaulted on the partial payment installment agreement and sent him a Notice of Defaulted Installment Agreement under Section 6159(b)—Notice of Intent to Levy Under Section 6331(d), dated June 4, 2008. As of August 1, 2008, petitioner owed $731,451.18 for the non-CDP period tax liabilities and penalties.

*Proceedings Before IRS Appeals*

On September 19, 2008, petitioner's counsel requested a partial payment installment agreement that would encompass all of petitioner's tax liabilities and penalties for the CDP and non-CDP periods. The Internal Revenue Service (IRS) settlement officer requested that petitioner submit a Form 433–A. Petitioner submitted the Form 433–A on February 11, 2009. The Form 433–A reported that petitioner had a monthly income of $27,633 ($331,596 per year) and monthly expenses of $24,416 ($292,992 per year). Included in the total monthly expenses were "other expenses" of $5,294, which consisted of: (1) Church tithing expenses of $2,110; (2) Church service expenses of $232; and (3) college expenses of $2,952.[5] Petitioner's counsel requested a partial payment installment agreement whereby petitioner would pay $3,000 a month for his unpaid tax liabilities and penalties for both the CDP and non-CDP periods. As of August 1, 2008, petitioner owed $888,351.15 for his tax liabilities and penalties for the CDP and non-CDP periods. As a result, even if we were to assume that the balance of petitioner's tax liabilities and penalties would not accrue interest during the installment agreement, it would take petitioner more than 24 years to fully pay his balance.

---

[4] We will refer to the sec. 6672 penalties for the periods ending December 31, 1999, and June 30 and September 30, 2000, and the income tax liabilities for the taxable years 1992, 1995, 1996, 1999, and 2000, as petitioner's non-CDP period tax liabilities and penalties.

[5] On an annual basis this equals: (1) $25,320 for Church tithing; (2) $2,784 for Church service expenses; and (3) $35,424 for college expenses.

In determining the monthly amount petitioner should pay, the settlement officer allowed only $19,244[6] of petitioner's monthly expenses as necessary expenses. These consisted of:

| Allowed expenses | Amount |
| --- | --- |
| Food, clothing, and miscellaneous ....................... | $2,680 |
| Housing and utilities .......................................... | [1]4,619 |
| Transportation .................................................... | 1,538 |
| Health care .......................................................... | 1,122 |
| Court-ordered alimony ....................................... | 600 |
| Life insurance .................................................... | 117 |
| Taxes .................................................................. | [2]8,568 |
| Total .............................................................. | 19,244 |

[1]The $4,619 allowed for housing and utilities was in excess of the amount listed on the IRS' national standard guidelines.

[2]These are current taxes and do not include the unpaid tax liabilities and penalties for the CDP and non-CDP periods.

The settlement officer determined that petitioner's claimed "other expenses" of $5,294 did not qualify as necessary expenses under the guidelines of the Internal Revenue Manual. As a result, the settlement officer determined that petitioner could afford a partial payment installment agreement with a monthly payment of $8,389.[7] Petitioner did not agree to a partial payment installment agreement with a monthly payment of $8,389.

Respondent then issued petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, dated April 8, 2009, sustaining the filing of the NFTL and the proposed levy action. Petitioner timely filed a petition with this Court.

### OPINION

Section 6331(a) provides that if any person liable to pay any tax neglects or refuses to pay such tax within 10 days after notice and demand for payment, then the Secretary is authorized to collect such tax by levy upon the person's property. Section 6331(d) provides that, at least 30 days before

---

[6] $230,928 annually.

[7] Even if we were to assume that interest would not accrue on the balance of petitioner's tax liabilities and penalties, it would take petitioner nine years to fully pay the balance with a monthly payment of $8,389.

enforcing collection by way of a levy on the person's property, the Secretary is obliged to provide the person with a final notice of intent to levy, including notice of the administrative appeals available to the person.

Section 6321 provides that if any person liable to pay any tax neglects or refuses to do so after demand, the amount shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person. Section 6323 authorizes the Commissioner to file an NFTL. Pursuant to section 6320(a) the Commissioner must provide the taxpayer with notice of and an opportunity for an administrative review of the propriety of the NFTL filing. *See Katz v. Commissioner*, 115 T.C. 329, 333 (2000).

Under certain circumstances a taxpayer may raise challenges to the underlying liabilities. *See* sec. 6330(c)(2)(B). If a taxpayer requests a CDP hearing in response to an NFTL or a notice of intent to levy, he may also raise at that hearing any other relevant issue relating to the unpaid tax or the proposed levy or lien. Secs. 6330(c)(2), 6320(c). Relevant issues include possible alternative means of collection such as an installment agreement. Sec. 6330(c)(2)(A)(iii).

If a taxpayer's underlying liability is properly at issue, the Court reviews any determination regarding the underlying liability de novo. *Goza v. Commissioner*, 114 T.C. 176, 181–182 (2000). Petitioner has the burden of proof regarding his underlying liabilities. *See* Rule 142(a). A taxpayer is precluded from disputing the underlying liability if it was not properly raised in the CDP hearing. *See Giamelli v. Commissioner*, 129 T.C. 107, 114 (2007). Petitioner did not raise issues regarding the existence or amounts of his underlying tax penalties for the CDP period or his tax liabilities and penalties for the non-CDP period in either his request for a CDP hearing or his petition. Consequently, petitioner's underlying tax liabilities and penalties are not properly before the Court.

The Court reviews administrative determinations by the Commissioner's Office of Appeals regarding nonliability issues for abuse of discretion. *Hoyle v. Commissioner*, 131 T.C. 197, 200 (2008); *Goza v. Commissioner*, 114 T.C. at 182. The determination of the Office of Appeals must take into consideration: (1) the verification that the requirements of applicable law and administrative procedure have been met;

(2) issues raised by the taxpayer; and (3) whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection be no more intrusive than necessary. Sec. 6330(c)(3); *see Lunsford v. Commissioner*, 117 T.C. 183, 184 (2001). The settlement officer based her determination on the factors required by section 6330(c)(3).

The Court does not make an independent determination of what would be an acceptable collection alternative. *See Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006); *Lipson v. Commissioner*, T.C. Memo. 2012–252, at *9. The extent of our review is to determine whether the settlement officer's decision was arbitrary, capricious, or without sound basis in fact or law. *See Murphy v. Commissioner*, 125 T.C. at 320. If the settlement officer followed all statutory and administrative guidelines and provided a reasoned, balanced decision, the Court will not reweigh the equities. *See Lipson v. Commissioner*, at *9 (citing *Fifty Below Sales & Mktg., Inc. v. United States*, 497 F.3d 828, 830 (8th Cir. 2007)).

Section 6159 authorizes the Commissioner to enter into written agreements allowing taxpayers to pay tax in installment payments if he deems that the "agreement will facilitate full or partial collection of such liability." The decision to accept or reject installment agreements lies within the discretion of the Commissioner.[8] *See Kuretski v. Commissioner*, T.C. Memo. 2012–262, at *9; sec. 301.6159–1(a), (c)(1)(i), Proced. & Admin. Regs. The Commissioner has created guidelines for settlement officers to follow in determining the terms of a partial payment installment agreement for a taxpayer who cannot fully pay his liability but can pay some of it. *See, e.g.*, Internal Revenue Manual (IRM) pt. 5.14.2.1 (Sept. 26, 2008).

In evaluating a taxpayer's ability to pay, the Commissioner classifies a taxpayer's expenses into two categories: (1) necessary expenses and (2) conditional expenses. *Pixley v. Commissioner*, 123 T.C. 269, 272 (2004); IRM pt. 5.14.2.1.1(4) (Sept. 26, 2008). "The total necessary expenses establish the

---

[8] Petitioner does not meet the requirements of sec. 6159(c), which if met would require respondent to enter into a full payment installment agreement.

minimum a taxpayer and family needs to live." IRM pt. 5.15.1.7(1) (May 9, 2008). If a taxpayer requests a partial payment installment agreement, then the taxpayer is allowed only necessary expenses; conditional expenses are not allowed. *See id.* pt. 5.14.2.1.1(4).

### *Issue 1. Tithing*

This issue involves whether petitioner's asserted religious obligation to tithe can trump his obligation to pay substantial amounts of delinquent penalties and taxes in a reasonably prompt manner. Petitioner introduced evidence, including a biblical passage from the Old Testament, to support his position. *See Malachi* 3:8–10. This brings to mind another biblical passage suggesting an answer to this type of dilemma: "Render therefore to Caesar the things that are Caesar's, and to God the things that are God's." *Matthew* 22:21. However, even this formulation presents the dilemma of determining which things fall into the two respective categories. While we may be incapable of determining what belongs to God, we believe that we can, and must, decide what is Caesar's. Therefore, we will consider this issue using the latter approach based on existing procedures and precedents.

Petitioner argues that the settlement officer abused her discretion by classifying his tithing as a conditional expense in determining the amount he could afford to pay in a partial payment installment agreement. Petitioner makes three separate arguments. First, petitioner argues that given his positions in the Church, tithing is required by the Internal Revenue Manual to be treated as a necessary expense. Second, petitioner argues that classifying his tithing as a conditional expense is a violation of his rights under the Free Exercise Clause of the First Amendment. Third, petitioner argues that classifying his tithing as a conditional expense is a violation of the Religious Freedom Restoration Act of 1993. Respondent disagrees with each of petitioner's arguments. We will discuss each of petitioner's arguments in turn.

A. *Necessary vs. Conditional Expenses Under the Internal Revenue Manual*

An expense must satisfy the necessary expense test to be considered a necessary expense. *See* IRM pt. 5.15.1.7. The necessary expense test has two prongs, one of which must be satisfied in order for an expense to be considered a necessary expense. The expense must provide for either (1) the taxpayer's health and welfare or (2) the taxpayer's production of income. *See id.*

Petitioner did not receive compensation for his positions in the Church. As a result, his tithing payments are not for the production of income. Petitioner has failed the second prong of the necessary expense test. Therefore, to be considered a necessary expense the tithing payments must satisfy the first prong of the necessary expense test; i.e., provide for petitioner's "health and welfare". *See id.* pt. 5.15.1.7(1).

Petitioner relies on a part of the Internal Revenue Manual that specifically discusses whether a minister's[9] tithing is an allowable expense. It states that a minister's tithe will be considered a necessary expense if it is a "condition of employment or meets the necessary expense test." *Id.* pt. 5.15.1.10 (May 9, 2008). The Internal Revenue Manual states that the amount tithed must be "the amount actually required and does not include a voluntary portion", *id.* ex. 5.15.1–1 Q&A (1) (May 9, 2008), and instructs the settlement officer to review the minister's employment contract, *id.* pt. 5.15.1.10.

1. *Employment*

Petitioner argues that the tithes are necessary expenses because tithing is a condition of petitioner's "employment" with the Church, notwithstanding the fact that petitioner received no financial remuneration for his positions with the Church. Respondent disagrees.

Petitioner testified that he is "employed" by the Church as a shift coordinator and stake scouting coordinator. At trial petitioner testified that he must tithe in order to maintain these positions with the Church. Petitioner produced a letter

---

[9] For purposes of analyzing petitioner's argument we will assume, without deciding, that petitioner's positions in the Church qualify him as a minister within the meaning of the Internal Revenue Manual. Respondent has not contested this.

from a bishop in his Church that stated petitioner would have to resign his positions with the Church if he did not tithe. [10] Petitioner acknowledged that if he was released from these positions his family's financial welfare would not be affected.

Petitioner argues that the term "employment" in the Internal Revenue Manual is not limited to compensated employment and can include uncompensated employment. Petitioner cites a dictionary which defines employment as an "[a]ctivity in which one engages and employs his time and energies". Webster's Third New International Dictionary 743 (2002). Respondent cites a different dictionary that defines employment as "[w]ork for which one has been hired and is being paid by an employer." Black's Law Dictionary 566 (8th ed. 2004).

We note that no case has specifically decided whether the term "employment" as used in IRM pt. 5.15.1.10 is limited to compensated employment or can include uncompensated employment. IRM pt. 5.15.1.10 provides that expenses can meet the requirements for being a necessary expense if they provide for the health and welfare of the taxpayer or they are for the production of income and instructs settlement officers to review the minister's employment contract. Employment is generally connected with the production of income. The parts in the Internal Revenue Manual allowing charitable contributions made as a "condition of employment" apply to a broad range of people including ministers, business executives, and employees. *See id.* ex. 5.15.1–1 Q&A (1). Petitioner's interpretation of the Internal Revenue Manual would seem to allow the expenses associated with *any* uncompensated activity as a necessary expense. This would make no sense.

On the other hand, the Commissioner's compelling interest in collecting taxes would be harmed if a minister, or any other taxpayer, loses his entire income as a result of the Commissioner not allowing a taxpayer to tithe a portion of his income if tithing is required to receive the income. As a result, the Internal Revenue Manual instructs settlement

---

[10] This letter was admitted into evidence without objection. We accept this statement for petitioner's case, but we make no finding that this is the official position of the Church.

officers to review the minister's employment contract to ensure that tithing is in fact a condition of employment. The Internal Revenue Manual's focus on the employment contract is consistent with the normal concept that an employment contract increases a taxpayer's ability to pay by providing the taxpayer with compensated employment. The IRS policy underpinning tax collection also supports this interpretation. A settlement officer is concerned with collecting as much of the outstanding tax liability as the taxpayer can afford to pay. Thus, the most logical reading of the part in the Internal Revenue Manual that considers whether a minister's, or any other taxpayer's, tithing is a "condition of employment" is a question that is related to determining whether the tithing is related to the taxpayer's production of income. Accordingly, we hold that it was not an abuse of the settlement officer's discretion to interpret the phrase "condition of employment" as used in the Internal Revenue Manual to be limited to "compensated employment".

2. *Health and Welfare*

Petitioner also argues that tithing is a necessary expense because it provides for his and his family's "health and welfare" as that phrase is used in Internal Revenue Manual pt. 5.15.1.7(1). Respondent disagrees.

Petitioner testified that not being able to tithe would negatively affect his spiritual welfare. Additionally, petitioner testified that losing his positions with the Church would be a blow to his and his family's welfare. Petitioner argues that the term "health" includes spiritual health and that since his tithing uplifts his spiritual health, his tithing is a necessary expense. Respondent disagrees.

Petitioner provided no evidence of specific spiritual benefits that would be affected whether or not he tithed. Petitioner cited no cases that support his argument that the phrase "health and welfare" in the Internal Revenue Manual encompasses a taxpayer's spiritual health and welfare. Respondent cited *Freeman v. Commissioner*, 320 Fed. Appx. 651, 652 (9th Cir. 2009), *aff'g* T.C. Dkt. No. 10251–06L (May 24, 2007) (bench opinion), an unpublished opinion that affirmed a bench opinion of this Court. *Freeman* was a collection due process proceeding where the Commissioner had filed an

NFTL against the taxpayer. *Id.* The Commissioner had rejected the taxpayer's offer-in-compromise. *Id.* On appeal the taxpayer argued that "the Tax Court erred by rejecting his claim that his tax liabilities should be offset by necessary expenses consisting of his charitable donations of $471.75 per month, which he considers essential to his health and welfare." *Id.* The Court of Appeals for the Ninth Circuit held that "the Tax Court did not err by concluding that these charitable contributions do not meet the 'necessary expense' test during an offer in compromise under the Internal Revenue Manual." *Id.*

We find that it was reasonable for the settlement officer to interpret the phrase "health and welfare" so as to not include petitioner's "spiritual" health and welfare. Indeed, it would generally be inappropriate for the Commissioner or this Court to make determinations concerning what is or is not necessary for a particular person's religious or "spiritual" health or welfare. See *Hernandez v. Commissioner*, 490 U.S. 680, 693–694 (1989), for a discussion of the problems of entanglement between church and State if the Government were required to delve into spiritual matters.[11] Accordingly, we hold that it was not an abuse of the settlement officer's discretion to determine that petitioner's tithing was not a necessary expense under the Internal Revenue Manual.

B. *Free Exercise of Religion*

Petitioner argues that the settlement officer's classification of his tithing as a conditional expense violates the Free Exercise Clause of the First Amendment because if he is not able to tithe then his Church will require him to resign his ministerial positions with the Church. Petitioner contends that the settlement officer's classification of petitioner's tithe as a conditional expense is tantamount to the settlement officer deciding who can be a minister in petitioner's Church.

The First Amendment to the Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof". Petitioner is correct that the Free Exercise Clause prevents the Govern-

---

[11] "'[P]ervasive monitoring' for 'the subtle or overt presence of religious matter' is a central danger against which we have held the Establishment Clause guards." *Hernandez v. Commissioner*, 490 U.S. 680, 694 (1989) (quoting *Aguilar v. Felton*, 473 U.S. 402, 413 (1985)).

ment from interfering in a church's selection of its ministers. *See Hosanna-Tabor Evangelical Lutheran Church v. EEOC*, 565 U.S. ___, 132 S. Ct. 694, 703 (2012) ("The Establishment Clause prevents the Government from appointing ministers, and the Free Exercise Clause prevents it from interfering with the freedom of religious groups to select their own."). However, the settlement officer has not interfered with *the Church's decision* of whether to keep petitioner as a minister. Petitioner offered into evidence a letter from a bishop in his Church that stated if he did not pay his tithe he would be required to resign his positions with the Church. However, petitioner overlooks the fact that it is *his Church* who is requiring him to resign his positions if he does not tithe. The settlement officer did not require petitioner to resign his positions nor did she pressure the Church to require petitioner to resign. The Free Exercise Clause prohibits the Government from interfering in a church's selection of its ministers. *See id.* at ___, 132 S. Ct. at 703. The Free Exercise Clause does not prohibit a church from requiring its ministers to tithe in order to maintain their ministership. If the Church decides that petitioner must resign his ministerial positions because he does not tithe, then that is solely the decision of the Church.

Paying taxes "is a burden, common to all taxpayers, on their pocketbooks, rather than a recognizable burden on the free exercise of their religious beliefs." *Pixley v. Commissioner*, 123 T.C. at 274. "Constitutional protection of fundamental freedoms 'does not confer an entitlement to such funds as may be necessary to realize all the advantages of that freedom.'" *Id.* (quoting *Harris v. McRae*, 448 U.S. 297, 318 (1980)). Petitioner is not entitled by the Constitution to be relieved of paying his substantial delinquent tax liabilities and penalties in order to pay his tithe. Requiring petitioner to pay taxes may result in his having less money to tithe. However, this is not a violation of the Free Exercise Clause. *See id.* at 275 (the Commissioner's classification of the taxpayer's tithing expenses as conditional expenses did not violate the Free Exercise Clause); *see also Hernandez v. Commissioner*, 490 U.S. at 700 ("[P]etitioners' claimed exemption stems from the contention that an incrementally larger tax burden interferes with their religious activities.

This argument knows no limitation. We accordingly hold that petitioners' free exercise challenge is without merit.").

Petitioner's position would allow religious organizations to control vital Government functions. This is not the intention or purpose of the Free Exercise Clause of the First Amendment. Rather, it prohibits the Government from exercising control over religious functions. Laws of general applicability that require persons to meet certain general requirements of citizenship, such as paying taxes, cannot be avoided by the fact that they indirectly make it more difficult to fulfill a purely religious duty, such as a member tithing a certain amount to his church or making a pilgrimage to a shrine in a foreign country. *See United States v. Lee*, 455 U.S. 252, 260 (1982); *Pixley v. Commissioner*, 123 T.C. at 274–275; *Adams v. Commissioner*, 110 T.C. 137, 139 (1998), *aff'd*, 170 F.3d 173 (3d Cir. 1999). "'[T]he tax system could not function if denominations were allowed to challenge the tax system' on the ground that it operated in a manner that violates their religious belief." *Hernandez v. Commissioner*, 490 U.S. at 700 (quoting *United States v. Lee*, 455 U.S. at 260). Accordingly, we hold that the settlement officer did not violate petitioner's rights under the Free Exercise Clause by classifying his tithing as a conditional expense.

C. *Religious Freedom Restoration Act of 1993*

Petitioner argues that not classifying tithing as a necessary expense violates the Religious Freedom Restoration Act of 1993 (RFRA). The RFRA provides:

(a) In general. Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).

(b) Exception. Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—

(1) is in furtherance of a compelling government interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

[42 U.S.C. sec. 2000bb–1(a) and (b)(1) and (2) (2006).]

Petitioner argues that a partial payment installment agreement with a $3,000 monthly payment would have been the

least restrictive means of collecting his tax liabilities and penalties. [12]

The Commissioner has a compelling interest in collecting taxes and in administering the tax system, which petitioner concedes. *See Adams v. Commissioner*, 110 T.C. at 139 ("[M]andatory participation in the Federal income tax system, irrespective of religious belief, is a compelling governmental interest."); *see also Hernandez v. Commissioner*, 490 U.S. at 699–700 (the Government has a "'broad public interest in maintaining a sound tax system,' free of 'myriad exceptions flowing from a wide variety of religious beliefs'" (quoting *United States v. Lee*, 455 U.S. at 260)).

For purposes of this case we will assume, without deciding, that the refusal to allow tithing as a necessary expense substantially burdens petitioner's exercise of religion. [13] Thus, we must decide whether the settlement officer abused her discretion by failing to use the least restrictive means of furthering the Government's compelling interest in collecting petitioner's tax liabilities. The parties cite no cases that have decided whether the Commissioner's refusal to allow tithing expenses in the context of entering into an installment agreement violates the RFRA. This appears to be an issue of first impression.

The RFRA does not require the Government to diminish its compelling interest; it is required only to use the least restrictive means to further its compelling interest. *See* 42 U.S.C. sec. 2000bb–1(b)(2). The fact that there is a less restrictive means than that used by respondent does not violate the RFRA if the less restrictive means requested by petitioner does not further respondent's compelling interest.

---

[12] We note that petitioner wrongly characterizes the settlement officer's required monthly payment of $8,389 as part of a full payment installment agreement. The settlement officer offered petitioner a partial payment installment agreement with a monthly payment of $8,389. As previously explained, an $8,389 monthly payment for petitioner's tax liabilities and penalties would not have resulted in full payment. *See supra* p. 177.

[13] Respondent does not agree that classifying petitioner's tithing as a conditional expense is a substantial burden on petitioner's exercise of religion. However, on brief respondent provides little argument or analysis to support this position and focuses primarily on the Government's compelling interest and arguing that he has met the least restrictive means requirement.

The Commissioner has a compelling governmental interest in expeditiously collecting taxes. *See Adams v. Commissioner*, 110 T.C. at 139; *see also United States v. Lee*, 455 U.S. at 260 ("Because the broad public interest in maintaining a sound tax system is of such a high order, religious belief in conflict with the payment of taxes affords no basis for resisting tax."); *United States v. Philadelphia Yearly Meeting of the Religious Soc'y of Friends*, 322 F. Supp. 2d 603, 610 (E.D. Pa. 2004) ("[T]he Government needs a speedy, cheap, and certain means of collecting delinquent taxes.").

The Commissioner's interest in expeditiously collecting taxes is especially compelling given the specific facts of this case. Petitioner has a long history of not paying his income tax liabilities. As of the date of trial petitioner still had not paid his income tax liabilities for the taxable years 1992, 1995, 1996, 1999, and 2000. Additionally, respondent has assessed trust fund recovery penalties under section 6672 against petitioner for seven different tax periods. Trust fund recovery penalties are assessed against any "person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or payment thereof". Sec. 6672(a); *see Thompson v. Commissioner*, T.C. Memo. 2012–87, 2012 Tax Ct. Memo LEXIS 88, at *6. We note that one of the trust fund recovery penalties was for a tax period that occurred after petitioner had entered into a previous installment agreement with respondent. Given petitioner's history of not paying his own income taxes, his willfully failing to collect and/or pay over taxes that should have been withheld from the wages of the corporation's employees, and his default on a previous installment agreement, respondent has a compelling interest in collecting petitioner's substantial tax liabilities and penalties as soon as possible.

The Commissioner's compelling interest in collecting taxes necessarily implies a compelling interest in collecting a taxpayer's tax liability in a timely manner. *See Flora v. United States*, 362 U.S. 145, 154 (1960) ("'It is essential to the honor and orderly conduct of the government that its taxes should be promptly paid'." (quoting *Cheatham v. United States*, 92 U.S. 85, 89 (1876))); *Phillips v. Commissioner*, 283 U.S. 589,

596 (1931); *United States v. Philadelphia Yearly Meeting of the Religious Soc'y of Friends*, 322 F. Supp. 2d at 610; *see also Browne v. United States*, 22 F. Supp. 2d 309, 311–312 (D. Vt. 1998), *aff'd*, 176 F.3d 25 (2d Cir. 1999). Petitioner's request for a partial payment installment agreement with a monthly payment of $3,000 would not fully pay his tax liabilities and penalties in a timely manner. Respondent's compelling interest in collecting taxes in a timely manner would not be furthered if respondent was required to allow petitioner to tithe to his Church instead of paying the substantial tax liabilities and penalties he owes to the Government. Although petitioner's request is less restrictive than the partial payment installment agreement offered by the settlement officer, it does not satisfy respondent's compelling interest and is therefore not a satisfactory "least restrictive" alternative that respondent must accept.[14]

The Commissioner has created guidelines in the Internal Revenue Manual for settlement officers to follow in determining the terms of a partial payment installment agreement. *See* IRM pt. 5.14.2.1.1. The settlement officer followed these guidelines in creating the terms of the partial payment installment agreement offered to petitioner. The settlement officer did not abuse her discretion by failing to use the least restrictive means to further respondent's compelling interest of collecting petitioner's significant tax liabilities and penalties in a timely manner.

We hold that the classification of petitioner's tithing as a conditional expense: (1) conformed to the guidelines in the Internal Revenue Manual; (2) was not a violation of petitioner's rights under the Free Exercise Clause; and (3) did not violate the RFRA.

---

[14] We note that "voluntary compliance is the least restrictive means by which the IRS furthers the compelling governmental interest in uniform, mandatory participation in the federal income tax system." *Browne v. United States*, 176 F.3d 25, 26 (2d Cir. 1999). The partial payment installment agreement that petitioner requested covered 12 different tax periods going back to 1992. Petitioner had the opportunity to voluntarily pay the penalties and taxes for each of the 12 tax periods covered by his proposed partial payment installment agreement when they were initially due. He failed to do so.

*Issue 2. College Expenses*

On Form 433–A petitioner reported monthly college expenses of $2,952. [15] Petitioner argues it was an abuse of discretion for the settlement officer to not allow his children's college expenses as a necessary expense. Respondent contends that his children's college expenses are conditional expenses.

In a partial payment installment agreement only necessary expenses are allowed. *See id.* pt. 5.14.2.1.1(4). The Internal Revenue Manual discusses both college expenses and education expenses.

IRM ex. 5.15.1–1 Q&A (2) provides:

> Question. A taxpayer has a child in an expensive university. She has already paid the university $25,000 for tuition and housing for the school year, and she intends to pay another $25,000 next July for the following school year. Should this expense be allowed?
>
> Answer. Yes, if the taxpayer can pay the liability plus accruals within five years. Otherwise, the expense will not be allowable. * * *

Petitioner would not fully pay his tax liabilities within five years under the terms of the partial payment installment agreements proposed by either petitioner or the settlement officer. Therefore, the college expenses would not be a necessary expense under IRM ex. 5.15.1–1 Q&A (2).

IRM pt. 5.15.1.10 provides that educational expenses are necessary "[i]f it is required for a physically or mentally challenged child and no public education providing similar services is available." Respondent argues that IRM pt. 5.15.1.10 applies only to expenses for primary or secondary schooling, and does not apply to college expenses. Petitioner argues that the language of IRM pt 5.15.1.10 does not explicitly limit educational expenses to primary or secondary schooling; therefore, it was an abuse of discretion for the settlement officer to not allow his children's college expenses as a necessary expense in computing the amount that petitioner had available to pay his delinquent tax liabilities. Petitioner has not cited any case that supports his interpretation that IRM pt. 5.15.1.10 applies to college expenses. [16]

---

[15] $35,424 per year.

[16] We note that it "is a well-settled principle that the Internal Revenue Manual does not have the force of law, is not binding on the IRS, and confers no rights on taxpayers." *McGaughy v. Commissioner*, T.C. Memo.

The Internal Revenue Manual specifically provides the requirements for college expenses to be allowed as a necessary expense. *See* IRM ex. 5.15.1–1 Q&A (2). It would not be logical for the Internal Revenue Manual to provide two different tests that can produce two different results for the same expense. Since the Commissioner specifically provided a test for college expenses it would be reasonable to conclude that the term "education expenses" referred to in IRM pt. 5.15.1.10 does not include within its meaning college expenses. If we accepted petitioner's interpretation, we would then need to decide whether the two tests in the Internal Revenue Manual form a conjunctive or disjunctive test. In other words, does a taxpayer need to satisfy both tests for college expenses to be a necessary expense, or does the taxpayer need to satisfy only one of the tests?

IRM pt. 5.15.1.10 provides that educational expenses can be considered a necessary expense if "no public education providing similar services is available." If we interpret IRM pt. 5.15.1.10 to apply to college expenses, then expenses for a private college could be a necessary expense while expenses for a public college would per se never be a necessary expense. This makes no sense. IRM pt. 5.15.1.10 is understandable when it is interpreted to apply only to primary or secondary schooling. Public primary and secondary schools are usually paid for by the State and local governments, not the parents of the children who attend them. However, private primary and secondary schools are normally paid for by the parents of the children attending the schools. Private primary and secondary schools can be expensive. The most reasonable interpretation of IRM pt. 5.15.1.10 is that a taxpayer must demonstrate that there is not a free public primary or secondary school that he could send his child to. If there were a free public primary or secondary school that could provide educational services to the mentally challenged child, then the settlement officer would not allow the taxpayer to pay tuition to a private primary or secondary school in lieu of paying the taxes he owes to the Government. We

---

2010–183, 2010 Tax Ct. Memo LEXIS 215, at *20; *see United States v. Caceres*, 440 U.S. 741 (1979); *Fargo v. Commissioner*, 447 F.3d 706, 713 (9th Cir. 2006), *aff'g* T.C. Memo. 2004–13; *United States v. Horne*, 714 F.2d 206, 207 (1st Cir. 1983).

find respondent's position that IRM pt. 5.15.1.10 applies to only expenses for primary and secondary education, and does not apply to expenses for college, to be reasonable. [17] The settlement officer's use of that interpretation was not an abuse of discretion.

Petitioner briefly argues that Form 433–A requires the settlement officer to allow his children's college expenses. Form 433–A states that "[w]e generally do not allow you to claim tuition for private schools, public or private college * * * [h]owever, we may allow these expenses, if you can prove that they are necessary for the health and welfare of you or your family or for the production of income." First, we note that Form 433–A does not have the force of law and confers no rights on taxpayers. *See Pomeroy v. United States*, 864 F.2d 1191, 1194–1195 (5th Cir. 1989) ("'[P]rocedures or rules adopted by the IRS are not law.'" (quoting *Keado v. United States*, 853 F.2d 1209, 1214 (5th Cir. 1988))); *McGaughy v. Commissioner*, T.C. Memo. 2010–183, 2010 Tax Ct. Memo LEXIS 215, at *20. Second, we note the discretionary nature of the wording of Form 433–A: "we may allow these expenses". Form 433–A clearly states that the expenses may not be allowed, and that discretion to allow the expenses lies with the IRS. We hold that Form 433–A does not require the settlement officer to classify petitioner's college expenses as a necessary expense.

### *Conclusion*

We hold that the determination to proceed with collection was not an abuse of the settlement officer's discretion, and the proposed collection action is sustained.

In reaching our decision, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

---

[17] Petitioner claimed that each of his five children had a "neurological disability" which required them to attend Brigham Young University. Even if he had established this, it would not make any difference in our analysis with respect to the allowability of college expenses.

To reflect the foregoing,

*Decision will be entered for respondent.*