T.C. Memo. 2019-129

UNITED STATES TAX COURT

COLEMAN MOORE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7390-16L.                    Filed September 30, 2019.

Carlos S. Lopez, for petitioner.

Adam B. Landy, Nancy M. Gilmore, and Thomas R. Mackinson, for
respondent.

MEMORANDUM OPINION

GOEKE, Judge:  Petitioner challenges respondent's attempt to collect by

levy unpaid trust fund recovery penalties (TFRP) for which petitioner is a

responsible officer.  These matters turn on whether the settlement officer assigned

[*2] to petitioner's hearing under section 6330[1] abused his discretion by sustaining the proposed levy. We find that the settlement officer abused his discretion and will remand this case. We have jurisdiction under section 6330.

Background

When the petition was filed, petitioner resided in California. In 2003 and 2004 petitioner was the president and the chief executive officer of H.L. Heggstad, Inc. (Heggstad). Heggstad failed to fully pay the employment taxes due and owing on Form 941, Employer's Quarterly Federal Tax Return, for the periods ending March 31 and December 31, 2003, and March 31 and June 30, 2004 (tax periods at issue). During his investigation of Heggstad's unpaid employment and trust fund taxes, respondent determined that petitioner had signatory authority over Heggstad's bank accounts and was a responsible officer for the nonpayment of its employment tax liabilities.

Respondent made two assessments against petitioner for the TFRP: (1) a jeopardy assessment on October 7, 2004, for each tax period at issue and (2) a nonjeopardy assessment on June 5, 2006, for only the tax period ending June 30, 2004. The revenue officer made the initial determinations of the TFRP, and the

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) as amended and in effect at all relevant times.

[*3] determinations were timely approved in writing by the revenue officer's supervisors.

I.     Submission of OIC

On August 7, 2008, respondent received Form 656, Offer In Compromise (OIC), from petitioner seeking to compromise the TFRP liabilities for Heggstad and another entity, Intex Form, Inc. (Intex), on the basis of doubt as to collectibility for five tax periods:  the tax periods ending December 31, 2002, March 31, 2003, and March 31 and June 30, 2004, for Heggstad, and the tax periods ending March 31 and September 30, 2003, and March 31 and June 30, 2004, for Intex.  Petitioner offered to compromise the outstanding liability as a responsible person for both companies for $49,962.29.  He did not contest the validity or the amounts of the underlying liabilities.  The Form 656 was prepared and signed by Eugene Neri, an enrolled agent, and the form designated Mr. Neri's employer's firm as petitioner's representative.

On March 4, 2010, respondent received an amended Form 656 (amended OIC) from petitioner signed and dated February 18, 2010, that removed the liabilities for Intex, revised the offer amount to $45,000, and included only the four tax periods at issue for Heggstad.

**[*4]**   In signing the original and amended Forms 656 petitioner affirmed that he had read, understood, and agreed to the requirement in section V, subsection (d) of the Form that he comply with all provisions of the Code relating to filing Form 1040, U.S. Individual Income Tax Return, and pay his required income tax for five years or until the offer amount is paid in full, whichever period was longer.  He also affirmed that if he failed to meet any of the terms and conditions of the OIC, he would also be in default on the offer, and respondent could seek collection of the liabilities.

On April 27, 2010, the Internal Revenue Service's (IRS) Sacramento, California, Appeals Office accepted petitioner's amended OIC.  Respondent's April 27, 2010, acceptance letter stated:  "Please note that the conditions of the offer require you to file and pay all required taxes for five years or until the offered amount is paid in full, whichever is longer."  By letter dated December 15, 2011, respondent notified petitioner that he had met the payment provisions of his OIC, and respondent began processing lien releases related to the tax periods at issue.  In this letter respondent reminded petitioner of the five-year compliance requirement and that noncompliance could result in the OIC's termination and reinstatement of the original liabilities.  The letter indicates that respondent sent it to petitioner's representative, who the parties identify as Mr. Neri.

**[*5]** II.     Income Tax Issues for 2010 Through 2012

On January 24, 2012, petitioner filed a joint income tax return for 2010 with his former spouse after its April 18, 2011, due date. He had not requested an extension for filing. Petitioner and his former spouse claimed the married filing jointly status. On their 2010 joint return petitioner and his former spouse reported total tax due of $1,881, withholding and credits of $1,405, and a balance due of $476. Petitioner did not pay the $476 balance due for 2010 by the April 18, 2011, filing deadline, but on January 24, 2012, he remitted a payment of $476 with the late-filed 2010 joint return. Respondent assessed a late filing penalty of $135, a late payment penalty of $23.80, and interest of $15.46 for 2010. Petitioner remitted an additional payment of $174.26 on April 6, 2012, to pay the penalties and interest.

Petitioner timely filed a 2011 joint return under extension on October 11, 2012. Petitioner and his former spouse claimed the married filing jointly status. On their 2011 joint return petitioner and his former spouse reported total tax due of $3,211, withholding and credits of $2,249, and a balance due of $962. On October 17, 2012, petitioner remitted a payment of $962. He attached Form 1040-V, Payment Voucher, to his payment that listed his address as "PO Box 3473, Sacramneto [sic], CA 95829" (P.O. Box 3473 address). The payment was

**[*6]** made with a check from El Dorado Savings Bank with a preprinted address for petitioner of "8880 Elder Creek Rd., Sacramento, CA 95828-1805" (Elder Creek address). Respondent assessed a late payment penalty of $28.86 and interest of $15.81 for 2011. Petitioner remitted an additional payment of $50.74 on June 21, 2017, to pay the penalty and interest.

Petitioner timely filed a 2012 joint return on October 14, 2013, under extension. Petitioner and his former spouse claimed the married filing jointly status. On their 2012 joint return petitioner and his former spouse reported total tax due of $7,804, withholding and credits of $4,485, and a balance due of $3,319. On October 17, 2013, petitioner remitted a payment of $3,319. Respondent assessed a late payment penalty of $99.57 and assessed interest of $50.98 for 2012. Petitioner remitted an additional payment of $150.55 on August 4, 2014, to pay the penalty and interest. Respondent assessed an additional amount of interest of $3.25, which petitioner paid on June 22, 2017.

The 2010 through 2012 returns were filed electronically and were prepared by a friend of petitioner who was an accountant. The 2010 through 2012 returns listed petitioner's address as the P.O. Box 3473 address. Petitioner did not have a post office box in Sacramento. Petitioner received electronic notifications when

**[*7]** the returns were filed and hard copies of the returns after their electronic filing, which he did not review.

Respondent issued to petitioner a notice of proposed changes, Notice CP 2000, dated December 3, 2012, notifying him of income unreported on his 2010 joint return. Notice CP 2000 was sent to petitioner's last known address, the P.O. Box 3473 address. For 2010 petitioner and his former spouse failed to report unemployment compensation received of $8,550. Petitioner does not dispute the omission of the unemployment compensation. He did not respond to Notice CP 2000 by the January 2, 2013, deadline, and on May 13, 2013, respondent issued to petitioner and his former spouse a notice of deficiency, by certified mail, to the P.O. Box 3473 address for the tax liability and a late payment penalty. Neither petitioner nor his former spouse responded to the notice of deficiency by the 90-day deadline of August 12, 2013, as petitioner did not receive it. Respondent made a default assessment on September 30, 2013, of $1,380 of income tax, an addition to tax under section 6651(a)(1) of $236, and interest of $88 for a total amount due of $1,704.

On January 10, 2014, the IRS Brookhaven Appeals Office (Brookhaven) sent a letter to petitioner at the P.O. Box 3473 address, notifying him that his OIC was terminated (termination letter) and that respondent was reinstating the TFRP

[*8] liabilities less payments made by petitioner because he did not timely pay his income tax liabilities for 2010, 2011, and 2012. A copy of the termination letter was sent to Mr. Neri as petitioner's representative. The termination letter also stated that petitioner did not contact respondent or pay the balance due by the January 2, 2014, deadline. The administrative record does not contain a written communication addressed to petitioner informing him of a default in the OIC, requesting that he contact respondent, or setting a January 2, 2014, deadline to respond or pay the amounts due.

On July 29, 2014, respondent sent a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320, to petitioner notifying him of a tax lien filing for unpaid income tax for 2010 and 2012. The lien notice was sent to petitioner's Elder Creek address, which petitioner provided to respondent upon filing his 2013 Form 1040 on April 15, 2014, and processed by respondent on May 19, 2014. In response to this notice petitioner promptly paid the amount shown as due, $1,893.40, by check dated August 1, 2014, and received by respondent on August 4, 2014. Respondent applied $1,742.85 of the August 1, 2014, payment against petitioner's 2010 income tax liability and $150.55 against his 2012 income tax liability. By letter dated August 5, 2014, respondent's revenue officer notified petitioner that the August 1, 2014, payment did not pay the entire amount due and

**[*9]** a balance of $212.35 remained. Petitioner remitted a check dated September 2, 2014, for the amount due, and respondent received this payment on September 4, 2014. Nevertheless, respondent sent petitioner a letter dated October 31, 2014, notifying him that respondent was revoking the release of the Federal tax liens for the TFRP liabilities for the tax periods at issue because of petitioner's failure to comply with the terms of the OIC.

Respondent issued to petitioner a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, dated December 3, 2015. The levy notice stated that petitioner owed $751,495.92 through January 3, 2016, for the TFRP under section 6672 for the tax periods at issue. On December 23, 2015, petitioner timely filed Form 12153, Request for a Collection Due Process or Equivalent Hearing. In the request petitioner asserted:

(a) he did not receive Notice CP 2000 in 2012, the notice of deficiency in 2013, or the termination letter in 2014;

(b) he fully complied with the terms and conditions of the accepted OIC, and he did not materially breach the OIC under California law;

(c) his representative did not receive the July 2014 lien notice for the unpaid Federal income tax liabilities; and

**[*10]** (d) respondent should reinstate the previously accepted OIC and abate the reinstated TFRP assessments.

Before the collection due process (CDP) hearing, the settlement officer assigned to petitioner's case determined that petitioner breached the terms and conditions of the OIC by (1) filing his 2010 joint return and paying the balance due late; (2) paying his 2011 income tax liability late and having a balance due at the time of the CDP hearing; and (3) paying his 2012 income tax liability late. On February 11, 2016, the settlement officer held a CDP hearing by telephone with petitioner's then representative, Spencer Malysiak. During the CDP hearing Mr. Malysiak argued that Brookhaven should not have terminated the OIC because petitioner's noncompliance was not a material breach of the OIC. At the conclusion of the telephone conference Mr. Malysiak requested additional time to submit a second OIC and the supporting financial information. The settlement officer refused this request. He determined that the financial statement that petitioner had provided was incomplete and that petitioner provided no new information for him to consider. He determined that Internal Revenue Manual (IRM) pt. 8.22.7.10.11(4) (Sept. 23, 2014) precluded respondent from reinstating petitioner's previously terminated OIC. That part of the IRM states:

**[*11]** The taxpayer may contend that the termination was improper because the default was insignificant or not a "material breach." The only relevant question is whether there was a default of an express condition. Whether the taxpayer "materially breached" the OIC or "substantially complied" with the OIC is irrelevant.

The settlement officer concluded the CDP hearing by sustaining the proposed levy and issued a notice of determination.

III.    Remand of CDP Hearing

On August 29, 2017, respondent filed a motion to remand the case to the Appeals Office for a supplemental CDP hearing for the purpose of considering a new OIC as a collection alternative. In his motion respondent asserted that the settlement officer did not provide petitioner with Form 656 or set a deadline for him to submit a new OIC and the required financial information statements and supporting documents. The Court held a hearing on September 18, 2017, to consider respondent's motion to remand and petitioner's counsel's motion to withdraw filed on August 3, 2017. Mr. Malysiak sought to withdraw as petitioner's counsel because petitioner was receiving conflicting advice from another attorney. The Court granted both motions over petitioner's objections. As a result of his counsel's withdrawal, petitioner was unrepresented at the hearing to oppose the motion to remand. At the hearing petitioner argued that his terminated OIC should be reinstated.

[*12] On October 19, 2017, Appeals received a letter from petitioner's new representative, Michael S. Cash, requesting a CDP hearing. On October 26, 2017, the settlement officer mailed to petitioner, with a copy to Mr. Cash, a Letter 4837, Appeals Received Your Request for a Collection Due Process Hearing, informing him that Appeals had received his request for a supplemental CDP hearing and scheduling a telephone conference for November 15, 2017. Before the supplemental CDP hearing, the settlement officer requested a new Form 656, the required financial statement, associated financial records, the application fee, and an initial offer payment. In response by a faxed letter dated October 31, 2017, Mr. Cash questioned why the supplemental CDP hearing was not assigned to a new settlement officer. On November 1, 2017, the settlement officer notified Mr. Cash that the IRM states that remanded CDP cases are assigned to the prior settlement officer, and there is no requirement that a supplemental CDP hearing be assigned to a new settlement officer. Petitioner did not present any testimony, other evidence, or circumstances that required the supplemental CDP hearing to be conducted by someone else.

Mr. Cash faxed the settlement officer a letter, dated November 13, 2017, and received on November 14, 2017, requesting the November 15, 2017, supplemental CDP hearing be rescheduled and arguing the terminated OIC should

[*13] be reinstated.  Mr. Cash argued that petitioner was not given an opportunity to cure the noncompliance before the OIC's termination.  He argued that Brookhaven's termination of the OIC without providing an opportunity to cure the default was an abuse of discretion.  He also argued that petitioner did not receive the termination letter or Notice CP 2000 and was entitled to actual notice and receipt of the Notice CP 2000 and the termination letter.  Mr. Cash objected to respondent's use of the P.O. Box 3473 address for the notices and letters.  He also stated that petitioner was not prepared to submit a new OIC at that time.

In response the settlement officer left a voice message for Mr. Cash on November 14, 2017, to discuss the faxed letter.  He stated that Mr. Cash's request to reschedule the CDP hearing was denied because the request was not timely.  On November 15, 2017, the settlement officer called Mr. Cash for the telephone supplemental CDP hearing.  During the supplemental CDP hearing petitioner did not submit a new Form 656.  Mr. Cash indicated that petitioner was not prepared to submit a new OIC at that time.  Instead Mr. Cash sought reinstatement of the terminated OIC as a first course of action.  The settlement officer understood that the main purpose of the remand was for petitioner to submit a new OIC.  The settlement officer stated that respondent terminated the OIC because petitioner had incurred unpaid income tax liabilities within the five-year compliance period.

**[\*14]** The settlement officer concluded the hearing by stating that it was his determination that Brookhaven followed all proper procedures in notifying petitioner of his noncompliance before terminating the OIC. Mr. Cash indicated that petitioner could file a new OIC, and the settlement officer advised that petitioner do so through IRS Compliance. In both the original and supplemental CDP hearings the settlement officer determined that the proposed levy balanced the need for the efficient collection of tax with petitioner's concern that the collection action be no more intrusive than necessary.

On December 12, 2017, respondent mailed a supplemental notice of determination to petitioner for the tax periods at issue, reaffirming the determination that the issuance of the levy notice was valid and appropriate and that petitioner was not entitled to a collection alternative because he did not submit a new Form 656 as requested by the settlement officer. In the original and supplemental notices of determination, the settlement officer determined that petitioner could not challenge the termination of his OIC because the termination was upheld by Appeals, which provided its decision in the January 10, 2014, termination letter. At trial petitioner did not present any testimony or other evidence to address or explore the possibility of any collection alternatives other than reinstatement of the terminated OIC.

**[*15]**                          Discussion

When the underlying tax liability is properly at issue in a CDP case, the Court decides the issue of liability de novo. Sego v. Commissioner, 114 T.C. 604, 610 (2000). A taxpayer is precluded from disputing the underlying tax liability in a CDP judicial review proceeding if the taxpayer failed to properly raise the merits of the underlying tax liability as an issue during the CDP hearing. Giamelli v. Commissioner, 129 T.C. 107, 115 (2007).

Petitioner did not raise the underlying TFRP liabilities for the tax periods at issue during the original or supplemental CDP hearing. In the letter dated February 9, 2016, Mr. Malysiak stated to the settlement officer that petitioner "understands that he cannot dispute the original assessment made against him for the civil penalties". He did not challenge the underlying tax liabilities during the original or supplemental CDP hearing. He sought reinstatement of his terminated OIC as a collection alternative during the hearings. Accordingly, he cannot now dispute the underlying TFRP liabilities.

Decisions regarding collection alternatives do not go to underlying liability and are, therefore, reviewed for abuse of discretion. Giamelli v. Commissioner, 129 T.C. at 111; Goza v. Commissioner, 114 T.C. 176, 182 (2000). Appeal of this case would lie with the Court of Appeals for the Ninth Circuit, which has held that

**[*16]** our review in abuse of discretion cases is limited to the administrative record. Kreit Mech. Assocs., Inc. v. Commissioner, 137 T.C. 123, 130 (2011) (citing Keller v. Commissioner, 568 F.3d 710, 718 (9th Cir. 2009), aff'g in part T.C. Memo. 2006-116 and aff'g in part, rev'g in part decisions in related cases). Under the abuse of discretion standard, the Court determines whether the IRS settlement officer exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law. Thompson v. Commissioner, 140 T.C. 173, 179 (2013) (citing Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006)).

To make that determination, the Court considers whether the settlement officer's decision "was grounded on an error of law or rested on a clearly erroneous finding of fact, or whether he applied the correct law to fact findings that weren't clearly erroneous but ruled in an irrational manner." Bennett v. Commissioner, T.C. Memo. 2008-251, slip op. at 6-7; see also Indus. Inv'rs v. Commissioner, T.C. Memo. 2007-93, slip op. at 7 (citing United States v. Sherburne, 249 F.3d 1121, 1125-1126 (9th Cir. 2001)). Where the settlement officer followed all statutory and administrative procedures and gave a reasoned decision, the Court cannot reverse simply because we might have weighed the equities differently. Fifty Below Sales & Mktg., Inc. v. United States, 497 F.3d

**[\*17]** 828, 830 (8th Cir. 2007); <u>Thompson v. Commissioner</u>, 140 T.C. at 179.  In determining whether the settlement officer abused his discretion, the Court considers whether he:  (i) properly verified that the requirements of any applicable law or administrative procedure had been met, (ii) considered any relevant issues raised by the taxpayer, and (iii) determined whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary."  Sec. 6330(c)(3); <u>see</u> sec. 301.6330-1(e), Proced. & Admin. Regs.

This Court has stated that it is not an abuse of discretion for the Appeals Office to determine that a taxpayer is ineligible for a collection alternative if the taxpayer does not provide the requested financial information.  <u>Tucker v. Commissioner</u>, T.C. Memo. 2014-103, at \*27; <u>Huntress v. Commissioner</u>, T.C. Memo. 2009-161, slip op. at 12; <u>see also</u> sec. 301.6330-1(e)(1), Proced. & Admin. Regs. ("Taxpayers will be expected to provide all relevant information requested by Appeals, including financial statements, for its consideration of the facts and issues involved in the hearing.").  A CDP hearing officer may refuse to consider a taxpayer's eligibility for a collection alternative if the taxpayer does not provide the requested documentation.  <u>See, e.g.</u>, <u>Kindred v. Commissioner</u>, 454 F.3d 688, 696-697 (7th Cir. 2006); <u>Kendricks v. Commissioner</u>, 124 T.C. 69, 79 (2005)

[*18] (holding that it is not abuse of discretion to decline to consider a collection alternative that the taxpayer did not propose). Moreover, the taxpayer is expected to meet reasonable deadlines set by the Appeals Office to submit requested information, and it is not an abuse of discretion to issue a determination if the taxpayer fails to submit the requested items within the reasonable time given. Pough v. Commissioner, 135 T.C. 344, 351 (2010).

On January 26, 2016, the settlement officer conducted an initial analysis of the case, which included reviewing the case file, petitioner's CDP request, and respondent's Integrated Data Retrieval System. He verified that the assessments were made for the tax periods at issue and that a balance due remained. He determined that the revenue officer timely obtained supervisory written approval. He also determined that the notice and demand for payment was sent to petitioner at his last known address. Finally, he determined that all legal and procedural guidelines regarding the TFRP assessments were followed. In the supplemental CDP hearing he provided petitioner with an opportunity to submit a new OIC, which petitioner chose not to do. Instead, petitioner argued that the Appeals Office failed to adhere to its administrative procedures when it terminated the OIC.

[*19] The crux of this case involves the settlement officer's refusal to consider the reinstatement of the terminated OIC. The Appeals Office terminated the OIC for noncompliance during the five-year compliance period. It is clear that petitioner and his wife filed a late return for 2010 and failed to timely pay their tax liabilities for 2010 and 2012, which left petitioner subject to a potential default on his OIC for noncompliance. Any noncompliance, even one that is immaterial, is sufficient to terminate an OIC. In this regard our caselaw is very supportive of respondent's position. See Trout v. Commissioner, 131 T.C. 239 (2008). As noted in Trout v. Commissioner, 131 T.C. at 253, and relevant in this case, the Commissioner could not have used any "plainer language [on Form 656] to explain the terms and conditions of the OIC or to express his intent." There was no difference of opinion regarding the OIC's terms and conditions between petitioner and the Appeals Office when the OIC was accepted on April 27, 2010. Petitioner testified that he understood that the terms of the OIC required him to timely file his income tax returns and timely pay his income tax for five years after the OIC's acceptance. He also admitted that he breached the terms and conditions of his OIC.

The fact that petitioner breached the terms and conditions of the OIC is not determinative, however. We must consider whether the settlement officer abused his discretion when he refused to reconsider the OIC's termination. Brookhaven

[*20] terminated the OIC for noncompliance. Petitioner argues that Brookhaven did not follow the administrative procedures for terminating an OIC for noncompliance, that the settlement officer did not properly verify that Brookhaven followed those procedures, and that such a failure is an abuse of discretion. For these reasons, he argues that his terminated OIC should be reinstated. Specifically, petitioner argues that Brookhaven did not issue a potential default letter to him or his representative that provided an opportunity to cure the noncompliance before Brookhaven terminated the OIC.[2] Respondent argues that the settlement officer did not abuse his discretion when he concluded that Brookhaven properly terminated the OIC and, thus, petitioner could not contest the termination or seek reinstatement of the OIC during the original and supplemental CDP hearings.

Under the terms of Form 656, termination for a taxpayer's noncompliance is authorized but not automatic. Form 656 states that the IRS may terminate the OIC. See IRM pt. 8.20.5.30.2(2) (Nov. 5, 2013) (IRS has right to terminate). The Commissioner must exercise his right to terminate an OIC in accordance with the

[2]For simplicity, we refer to a letter informing a taxpayer of a default and providing an opportunity to cure as a potential default letter and a letter informing the taxpayer terminating the OIC for a default that was not cured as a termination letter.

[*21] administrative procedures applicable to a potential default on an OIC. The IRM sets out procedures for terminating an OIC for noncompliance in Part 5, Collecting Process, and Part 8, Appeals. Part 5 reiterates the Commissioner's discretionary, but not automatic, termination of an OIC for noncompliance. Under IRM part 5, upon a default, a "default letter" is sent. IRM pt. 5.8.9.3 (Apr. 15, 2011). The IRS "will make an attempt to secure compliance" and "[i]f the taxpayer fails to comply with any requests for delinquent returns or payments, the * * * [IRS] will default the offer." Id. The IRS will terminate the OIC and reinstate the liability "[a]fter all appropriate letters have been sent". Id. The IRM notes that compliance often occurs after the taxpayer receives a default letter and the taxpayer should be given a grace period of at least 60 days to comply before the OIC is terminated. IRM pt. 5.19.7.3.20(4) (Jan. 8, 2014).

Respondent argues that IRM part 5 does not apply to a settlement officer in a CDP hearing; instead he argues that we should consider the procedures in IRM part 8. He argues that IRM part 5 applies to offer examiners, offer specialists, tax examiners in the Monitoring Offer in Compromise unit, and other employees assigned to the OIC program when a taxpayer breaches an OIC. He argues that neither the settlement officer nor Brookhaven was responsible for investigating an OIC or processing and monitoring closed OICs. Respondent argues that IRM

**[\*22]** part 8 grants the IRS the right to terminate an OIC if a taxpayer fails to meet any of the terms of the OIC. He quotes IRM pt. 8.22.7.10.8(1) (Aug. 9. 2017):[3] "When the IRS determines an OIC is in default, it sends the taxpayer a default letter to cure the noncompliance items. If the taxpayer does not cure the default, the OIC is terminated. A taxpayer does not have a right to appeal the termination of an OIC."

In his brief respondent acknowledges that under the IRM the Appeals Office was required to send petitioner a potential default letter and to give him an opportunity to cure before terminating the OIC. The provisions of the IRM respondent cites mandate the issuance of a potential default letter that provides an opportunity to cure separate from the IRM part 5 procedural requirements.[4] Thus, the parties' dispute over whether we should look to part 5 or part 8 is immaterial. The settlement officer was required to verify that Brookhaven sent a potential default letter.

---

[3]Both parties cite the current edition of the IRM.

[4]Internal Revenue Manual (IRM) pt. 5.19.7.2.19.4 was subsequently revised on August 25, 2017, stating that the IRS must send a potential default letter providing an opportunity to cure the default; and if the taxpayer does not respond to the potential default letter, a formal "default letter" is then sent, referred to in this case as a termination letter. IRM pt. 5.19.7.2.19.4(8) and (9). The termination comes "[a]fter all appropriate letters have been sent". IRM pt. 5.8.9.4(3) (Jan. 12, 2017).

**[\*23]** Respondent argues that Brookhaven's decision to terminate the OIC was not part of the CDP process. Yet the levy action at issue followed Brookhaven's decision to terminate the OIC. The purpose of the CDP hearing is to give the taxpayer an opportunity for an independent review to ensure that the levy action is warranted and appropriate. The settlement officer determined that petitioner breached the OIC's terms and the OIC was subject to termination; however, that was not the end of his required inquiry. The settlement officer was required to verify that all administrative procedures with respect to the levy action had been satisfied. Termination of the OIC was a necessary step before the levy action could be initiated.

During the CDP hearing the taxpayer may raise "any relevant issue relating to unpaid tax or proposed levy" including the appropriateness of collection actions, and the hearing officer is required to consider those issues. Sec. 6330(c)(2)(A)(ii). Section 6330(c)(4)(A) prohibits a taxpayer from raising an issue during the CDP hearing if (1) the issue was raised and considered at a previous section 6320 hearing or in any other previous administrative or judicial proceeding and (2) the taxpayer participated meaningfully in such a hearing or proceeding. Section 6330(c)(4) would not preclude petitioner from raising the

[*24] OIC's termination in the original and supplemental CDP hearings because he did not meaningfully participate in Brookhaven's decision to terminate the OIC.

Respondent argues that the potential default letter was sent and that petitioner was given an opportunity to cure before Brookhaven terminated the OIC; however, the administrative record does not support that argument. Respondent argues that the settlement officer "inferred that (1) a OIC default letter was sent in December 2013 with a response deadline of January 2, 2014." We are not satisfied with this inference. The administrative record does not establish that Brookhaven sent petitioner or his representative a potential default letter.

Respondent argues that the settlement officer did not abuse his discretion in determining that Brookhaven had sent a potential default letter to petitioner. There is no document in the administrative record that references an opportunity to cure or that sets a January 2, 2014, deadline except for the termination letter. The administrative record does not support a finding that Brookhaven followed the administrative procedures before terminating the OIC. Conversely, the Appeals officer in Trout did consider whether he should reinstate the terminated OIC as a collection alternative but determined that the taxpayer had already been given sufficient opportunity to cure the default before the OIC's termination as the

[*25] Commissioner had made several efforts to bring the taxpayer into compliance.[5]  See also West v. Commissioner, T.C. Memo. 2008-30, slip op. at 5 (upon noncompliance, the IRS sent letters warning the taxpayers that they were potentially in default on their OICs and giving them opportunities to cure the noncompliance before terminating the OICs); Ng v. Commissioner, T.C. Memo. 2007-8, slip op. at 4-5 (same).

Respondent alternatively argues that Notice CP 2000, the notice of deficiency, and the termination letter satisfy the administrative procedures for terminating an OIC.  We disagree.  Respondent properly notified petitioner of the 2010 income tax deficiency that resulted in the OIC's termination.  However, neither Notice CP 2000 nor the notice of deficiency warns that the 2010 income tax deficiency would result in the OIC's termination.  Neither notice informs petitioner of an opportunity to cure the default or sets a January 2, 2014, deadline to cure the default.  Neither notice was sufficient under the administrative procedures for a potential default letter.  A potential default letter provides an

---

[5]In Trout v. Commissioner, 131 T.C. 239 (2008), the IRS sent the taxpayer multiple letters informing him of a potential default on the OIC, gave him 30 days to cure the noncompliance, and threatened to terminate the OIC if he did not respond to the letters.  Approximately seven months later, the IRS sent a letter informing the taxpayer the OIC was terminated on the basis of his noncompliance and failure to cure.  Thereafter, the IRS sent a notice of intent to levy.

[*26] opportunity to cure. Neither Notice CP 2000 nor the notice of deficiency mentioned such an opportunity or the OIC. Moreover, both relate only to 2010, but the termination letter states there was noncompliance and an opportunity to cure for 2010, 2011, and 2012 with a January 2, 2014, deadline.

During the original and supplemental CDP hearings the settlement officer was required to verify that the administrative procedures with respect to the proposed levy had been satisfied. He did not verify that the administrative procedures for terminating the OIC were followed as he did not properly verify that a potential default letter was sent before the termination letter.

In the notices of determination the settlement officer cited IRM pt. 8.22.7.10.11(4) (Sept. 23, 2014) as the basis for not reinstating the terminated OIC. That provision relates to a taxpayer's argument that the breach of an OIC was immaterial and should not result in a termination. Further, IRM pt. 8.22.7.10.11(3) states: "Appeals will not reinstate an OIC where there was a default and the OIC was properly terminated." It is possible that the OIC was not properly terminated in accordance with the administrative procedures irrespective of the materiality of the breach.

Respondent further argues that a taxpayer generally cannot appeal the termination of an OIC and that a terminated OIC can be reinstated only in rare

[*27] cases when the taxpayer properly shows that the termination was in error because of circumstances beyond his control. "In rare situations, a defaulted offer may be reopened based upon a taxpayer's exceptional circumstance." IRM pt. 5.19.7.2.20.4(2) (Oct. 30, 2018). "A situation may arise where an offer in compromise is defaulted and we later discover that the termination was an IRS error." Id. at (1).

At trial petitioner argued that he did not receive Notice CP 2000, the notice of deficiency, or the termination letter because he was living in his employer's warehouse and the letter was improperly addressed to P.O. Box 3473. For the dates of these notices, petitioner's last known address was the P.O. Box 3473 address. He did not submit Form 8822, Change of Address, to respondent. Although petitioner never had a post office box in Sacramento, the P.O. Box 3473 address was on his joint returns, which he failed to review. Furthermore, the termination letter was sent to Mr. Neri, petitioner's then representative. Petitioner argues that a check, dated October 17, 2012, with the Elder Creek address that he submitted to pay his 2011 income tax was sufficient to notify respondent of a change of address. However, Form 1040-V submitted with the check listed his address as the P.O. Box 3473 address. The address on this check is hardly clear and concise notification to respondent of petitioner's change of address.

**[*28]** It is clear that the OIC was not terminated because of circumstances beyond petitioner's control. His default was his own doing. He failed to carefully manage his income tax liabilities and filing obligations for five years after being granted a favorable OIC that was conditioned on his tax compliance. He also failed to notify respondent of a change to his mailing address. However, these failures on petitioner's part do not excuse respondent's failure to follow his own administrative procedures for terminating an OIC. The administrative record does not contain a potential default letter providing an opportunity to cure the noncompliance. If respondent did send a potential default letter to petitioner's last known address, it is unlikely petitioner would have received it. However, the administrative record does not establish that respondent sent a potential default letter to petitioner's last known address. Nor does it establish that he sent a potential default letter to petitioner's representative, Mr. Neri. The termination letter was sent to Mr. Neri and so was the December 15, 2011, letter notifying petitioner that he had satisfied the payment terms of the OIC and that respondent was releasing the liens against petitioner.

**[*29]** We have no way of knowing what respondent may have proposed for petitioner to cure the noncompliance if he indeed sent a potential default letter.[6] What we do know is that petitioner cured the noncompliance promptly once he discovered that he owed additional amounts. Notably, respondent did not revoke the release of the liens for the years at issue associated with the terminated OIC until after petitioner had already paid the income tax liabilities due, and he did not issue the notice of intent to levy at issue in the original and supplemental CDP hearings until over one year after petitioner had paid the tax.

In conclusion, we find that the settlement officer did not properly verify that Brookhaven followed the administrative procedures for terminating the OIC. We hold that the determination to sustain the proposed levy without doing so was an abuse of discretion. During the original and supplemental CDP hearings petitioner requested reinstatement of the terminated OIC as a collection alternative, and the settlement officer did not consider that request. Accordingly, we will remand this case. On remand the settlement officer should consider whether the OIC was properly terminated and, if not, whether the terminated OIC should be reinstated

---

[6]Payment of the tax owed appears to be an acceptable cure to avoid an OIC's termination. The termination letter stated that petitioner did not contact respondent or pay the balance due by the January 2, 2014, deadline.

**[*30]** as a collection alternative. Given the circumstances described, we would suggest a new settlement officer be assigned to this case.

In reaching our holding, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.