T.C. Memo. 2017-161

UNITED STATES TAX COURT

KEVIN M. BULLOCK AND EDNA D. BULLOCK, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25152-15L.                    Filed August 21, 2017.

Kevin M. Bullock and Edna D. Bullock, pro sese.

<u>Deborah Aloof</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  In this collection due process (CDP) case petitioners seek

review pursuant to section 6330(d)(1)[1] of the determination by the Internal Reve-

---

[1]All statutory references are to the Internal Revenue Code in effect at all
relevant times, and all Rule references are to the Tax Court Rules of Practice and
Procedure.  We round all monetary amounts to the nearest dollar.

[*2] nue Service (IRS or respondent) to uphold a notice of intent to levy. Respondent has moved for summary judgment under Rule 121, contending that there are no disputed issues of material fact and that his determination to sustain the proposed collection action was proper as a matter of law. We agree and accordingly will grant the motion.

Background

The following facts are based on the parties' pleadings and respondent's motion, including the attached declaration and exhibits. Petitioners separated sometime before August 2015. Mr. Bullock resided in Maryland and Mrs. Bullock resided in the District of Columbia when they filed their petition.

Petitioners filed joint Federal income tax returns for 2012 and 2013 but did not pay the tax shown as due. The IRS subsequently assessed the tax for both years plus additions to tax under sections 6651(a)(2) and 6654(a). Petitioners' total outstanding tax liabilities for 2012 and 2013 exceed $44,000.

On November 24, 2014, in an effort to collect these unpaid liabilities, the IRS sent petitioners a Final Notice of Intent to Levy and Notice of your Right to a Hearing. On December 22, 2014, respondent received from petitioners a Form 12153, Request for a Collection Due Process or Equivalent Hearing. In their request they checked the boxes marked "Installment Agreement," "Offer in Compro-

[*3] mise," and "I Cannot Pay Balance." They attached to their request a statement indicating (among other things) that they intended to seek abatement of the additions to tax.

After receiving petitioners' case, a settlement officer (SO) from the IRS Appeals Office reviewed their administrative file and confirmed that the tax liabilities in question had been properly assessed and that all other requirements of applicable law and administrative procedure had been met.[2] On February 10, 2015, the SO sent petitioners a letter scheduling a telephone CDP hearing for March 18, 2015. The SO informed petitioners that, in order for him to consider collection alternatives, they had to provide him before the hearing: (1) completed Forms 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals; (2) proof of estimated tax payments for 2014; and (3) a statement explaining any "reasonable cause" defense they might have against the additions to tax. The SO requested that petitioners send him these documents by February 24, 2015.

---

[2]Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment" receives supervisory approval. This provision does not apply to "any addition to tax under section 6651, 6654, or 6655." Sec. 6751(b)(2)(A). Accordingly, the SO was not required to verify that the additions to tax assessed against petitioners under sections 6651(a)(2) and 6654(a) had been approved by a supervisor.

**[*4]** Petitioners supplied none of the requested documents by that date. On March 18, 2015, the SO attempted to contact petitioners' representative to conduct the scheduled CDP hearing, but the representative was unavailable. On March 23, 2015, the SO sent petitioners a letter allowing them 14 days to submit the requested documentation. After receiving this letter each petitioner submitted a separate Form 433-A to the SO.

On his Form 433-A Mr. Bullock reported monthly income of $9,603 and monthly expenses of $11,863. The SO determined that Mr. Bullock had under-reported his monthly income and that his monthly expenses exceeded the applicable local standards by more than $3,000 per month. The SO determined that Mr. Bullock's actual monthly income was $10,418 and that his allowable monthly expenses were $8,052. He accordingly calculated that Mr. Bullock could make monthly payments of $2,366 toward his tax liabilities.

On her Form 433-A Mrs. Bullock reported monthly income of $12,602 and monthly expenses of $11,107. The SO determined that her allowable monthly expenses, under the applicable local standards, were $9,708. He accordingly calculated that Mrs. Bullock could make monthly payments of $2,894 toward her tax liabilities.

**[*5]** On August 12, 2015, the SO contacted petitioner's representative, who inquired about a six-year installment agreement. See Internal Revenue Manual (IRM) pt. 5.14.1.4.1 (Sept. 19, 2014). The SO proposed a six-year installment agreement with monthly payments of $4,315 to be divided between petitioners. (This was $945 less than the sum of the monthly payments, or $5,260, that he had determined petitioners could make separately.) The $4,315 monthly payments under the SO's proposed agreement would have covered petitioners' outstanding tax liabilities for 2007-2013.

On August 21, 2015, petitioners informed the SO that they would not accept this offer. He allowed them another 12 days to submit a counteroffer, but they chose not to do so. The SO accordingly closed the case and, on September 2, 2015, issued a notice of determination sustaining the proposed levy.

Petitioners timely petitioned this Court. On January 19, 2017, respondent filed a motion for summary judgment, to which we directed petitioners to respond. Our order informed them that, if they disagreed with any facts stated in the IRS motion, they should point out those specific factual issues. We also informed petitioners that failure to respond to our order would be grounds for granting respondent's motion and entering judgment against them. Petitioners did not re-

**[\*6]** spond to this Court's order and have not otherwise responded to the IRS motion for summary judgment.

## Discussion

### I.  Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials.  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law.  Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C.  518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).  In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party.  Ibid.  However, the nonmoving party may not rest upon mere allegations or denials of his pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial.  Rule 121(d); see Sundstrand Corp., 98 T.C. at 520.

Because petitioners did not respond to the motion for summary judgment, we could enter decision against them for that reason alone.  See Rule 121(d). We will nevertheless consider the motion on its merits.  We conclude that no material facts are in dispute and that this case is appropriate for summary adjudication.

**[*7]** II.     Standard of Review

Section 6330(d)(1) does not prescribe the standard of review that this Court

should apply in reviewing an IRS administrative determination in a CDP case.

Where (as here) there is no challenge to the amounts of the taxpayers' underlying

liabilities for the years in question,[3] we review the IRS determination for abuse of

discretion.  Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  Abuse of dis-

cretion occurs when a determination is arbitrary, capricious, or without sound

basis in fact or law.  See Murphy v. Commissioner, 125 T.C. 301, 320 (2005),

aff'd, 469 F.3d 27 (1st Cir. 2006).

III.     Analysis

In deciding whether the SO abused his discretion in sustaining the proposed

levy, we consider whether he:  (1) properly verified that the requirements of appli-

cable law or administrative procedure have been met; (2) considered any relevant

---

[3]In their request for a CDP hearing petitioners indicated that they intended to seek abatement of the additions to tax on the ground of "reasonable cause." However, they did not submit to the SO any evidence of reasonable cause despite his request that they do so.  Nor did they challenge the additions to tax in their petition to this Court.  They are thus precluded from challenging the additions to tax here.  See Rule 331(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded."); Thompson v. Commissioner, 140 T.C. 173, 178 (2013) ("A taxpayer is precluded from disputing the underlying liability if it was not properly raised in the CDP hearing."); sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

**[*8]** issues petitioners raised; and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioners] that any collection action be no more than intrusive that necessary." See sec. 6330(c)(3). We find that the SO properly verified that all requirements of applicable law and administrative procedure were followed.[4]

Taxpayers may raise at a CDP hearing relevant issues relating to the collection action and are entitled to make offers of collection alternatives. See sec. 6330(c)(2) and (3). In their hearing request petitioners indicated their intention to seek a collection alternative in the form of an installment agreement.[5]

Section 6159 authorizes the Commissioner to enter into an installment agreement if he determines that it will facilitate full or partial collection of a taxpayer's unpaid liability. See Thompson v. Commissioner, 140 T.C. 173, 179 (2013). Subject to exceptions not relevant here, the decision to accept or reject an

---

[4]Petitioners assert that the assessments for 2012 and 2013 were incorrect. But these assessments were based on the tax that petitioners had reported on their 2012 and 2013 returns. The SO states in his case activity record that he "verified through transcript analysis that there is a valid assessment" for each year. Petitioners have alleged no facts suggesting that either assessment was improper, and we find no basis in the record for any such contention.

[5]According to petitioners' account transcripts for 2012 and 2013, they entered into installment agreements with the IRS in early 2014. These agreements were withdrawn later that year, apparently because of petitioners' failure to make the agreed-upon payments.

**[\*9]** installment agreement lies within the Commissioner's discretion. <u>See</u> sec. 301.6159-1(a), (c)(1)(i), Proced. & Admin. Regs.; <u>see also</u> <u>Rebuck v. Commissioner</u>, T.C. Memo. 2016-3; <u>Kuretski v. Commissioner</u>, T.C. Memo. 2012-262, <u>aff'd</u>, 755 F.3d 929 (D.C. Cir. 2014).

Petitioners supplied Forms 433-A with attached financial documentation. After determining their allowable expenses under applicable local standards, the SO determined that Mr. and Mrs. Bullock could make monthly payments of $2,366 and $2,894, respectively, toward their tax liabilities. Petitioners do not contend that they are entitled to a deviation from the IRS local standards.

At petitioners' request the SO calculated what their required payments would be under a six-year installment agreement. <u>See</u> IRM pt. 5.14.1.4.1 ("When a taxpayer is unable to full pay immediately and does not qualify for a streamlined installment agreement, the taxpayer may still qualify for the six-year rule."). The SO determined that the required monthly payment would be $4,315 split between them; this was $945 less than the sum of the monthly payments that he determined they could make separately. Petitioners rejected this offer, but they did not explain the grounds for their rejection. Nor did they make a counteroffer, even though the SO invited them to do so and gave them 12 days to submit one.

**[\*10]**   In their petition, petitioners assert that payments as high as $4,315 per month would cause them economic hardship.  Economic hardship is defined as the inability to "meet reasonable basic living expenses."  IRM pt. 5.8.11.2.1(2) (Aug. 5, 2015).  Petitioners advanced no claim of "economic hardship" to the SO.  Nor did they allege in their petition any facts suggesting that they would be unable to meet basic living expenses under the SO's proposal.  We decline to impose on settlement officers an obligation to evaluate arguments that taxpayers have not made.  See, e.g., Allen v. Commissioner, T.C. Memo. 2017-64, at \*12.[6]

In reviewing the SO's decision respecting an installment agreement, we will not substitute our judgment for his, recalculate the taxpayer's ability to pay, or independently determine what would be an acceptable offer.  See Thompson, 140 T.C. at 179; Lipson v. Commissioner, T.C. Memo. 2012-252.  And an SO is not required to negotiate with a taxpayer indefinitely.  See, e.g., Kreit Mechanical Assocs., Inc. v. Commissioner, 137 T.C. 123, 134 (2011).  Petitioners had ample opportunity to submit a counteroffer for the SO's consideration but declined to do

---

[6]Petitioners allege that Mrs. Bullock filed for chapter 7 bankruptcy in October 2011, but they have submitted no documentation suggesting that any bankruptcy case remains pending.  Without an automatic stay in place under 11 U.S.C. sec. 362(a) (2012), respondent may pursue collection action against Mrs. Bullock.  In any event, any automatic stay would not affect collection action with respect to her 2012 and 2013 tax years, which postdate her alleged bankruptcy filing.

**[\*11]** so.  The SO did not abuse his discretion by closing the case when petitioners failed to submit a counteroffer by his deadline and ceased further communications with him.  See Gentile v. Commissioner, T.C. Memo. 2013-175, 106 T.C.M. (CCH) 75 (finding no abuse of discretion where taxpayer failed to submit a Form 656).[7]

In sum, we find that the SO in upholding the levy properly balanced the need for efficient collection of taxes with petitioners' legitimate concern that the collection action be no more intrusive than necessary.  Petitioners rejected the SO's proposed installment agreement without offering an alternative, and the SO acted reasonably in closing the case.  Finding no abuse of discretion in this or any other respect we will grant summary judgment for respondent and sustain the proposed levy.

---

[7]An Appeals officer likewise does not abuse his discretion in declining to enter into an installment agreement where the taxpayers are unwilling or unable to comply with their ongoing estimated tax obligations.  See Giamelli v. Commissioner, 129 T.C. 107, 111-112 (2007); Boulware v. Commissioner, T.C. Memo. 2014-80, 107 T.C.M. (CCH) 1419, 1424, aff'd, 816 F.3d 133 (D.C. Cir. 2016). Petitioners do not dispute that they were not in compliance with their estimated tax obligations for 2014.

[*12]  To reflect the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered</u>.