T.C. Memo. 2021-134

UNITED STATES TAX COURT

JAMES R. O'DONNELL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16881-18L.                          Filed November 30, 2021.

James R. O'Donnell, pro se.

<u>Christina L. Cook</u> and <u>Lisa R. Jones</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  In this collection due process (CDP) case petitioner seeks review pursuant to sections 6320(c) and 6330(d)(1) of the determination by the Internal Revenue Service (IRS or respondent) to uphold the filing of a notice of

[*2] Federal tax lien (NFTL).[1]  Respondent has moved for summary judgment under Rule 121, contending that the settlement officer did not abuse his discretion in upholding the NFTL filing.  We agree and accordingly will sustain the collection action for all years except 2012, as to which we find that we lack jurisdiction.

## Background

The following facts are derived from the parties' pleadings and motion papers, including a declaration that attached the administrative record.  See Rule 121(b).  Petitioner resided in Minnesota when he filed his petition.

Petitioner failed to comply with his Federal income tax obligations for a very long time.  For two decades (if not longer) he failed to file returns and failed to pay the tax shown on substitutes for return (SFRs) that the IRS prepared for him.  Among the years for which he failed to meet his obligations were 2006, 2010, 2011, 2013, and 2014.  The IRS for those years assessed deficiencies, additions to tax, and interest totaling more than $430,000.  As of May 2016 petitioner's outstanding liabilities for all open years exceeded $2 million.

---

[1]All statutory references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

[*3]   With a view to addressing these unpaid liabilities petitioner sought an offer-in-compromise (OIC).  On May 9, 2016, he submitted a Form 656, Offer in Compromise, in which he offered to pay $280,000 in satisfaction of his liabilities for all open years, premising his offer on doubt as to collectibility.  He included a $56,000 check with the offer, representing a 20% downpayment as required by Form 656.  He concurrently filed 12 years' worth of delinquent returns.

The IRS referred petitioner's offer for evaluation to its OIC processing unit (OIC unit).  Upon reviewing petitioner's delinquent returns and account transcripts, the OIC unit ascertained that he had not made required estimated tax payments for 2016 or verified that his tax withholdings or estimated tax payments for 2017 were sufficient.  The OIC unit accordingly recommended denial of his offer.  In September 2017 the IRS issued petitioner a denial letter, explaining that the IRS "will only consider an offer when you are in full compliance."

By letter dated October 19, 2017, petitioner's representative urged the IRS to reconsider its denial.  His representative asserted that petitioner had no obligation to pay estimated taxes and that his offer had thus been denied on an incorrect premise.  The IRS subsequently decided to reopen the case.

On October 31, 2017, while petitioner's OIC remained under review, the IRS sent him a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a

**[*4]** Hearing (lien notice).  The NFTL covered 2006, 2010, 2011, 2013, and 2014.  Petitioner timely requested a CDP hearing, asserting that "[i]t is premature to take collection action" and urging the IRS to accept his previously submitted offer.  About nine months later the IRS filed an NFTL for 2012 and on August 14, 2018, sent petitioner a Letter 3172 for that year.[2]

On March 27, 2018, the OIC unit rejected petitioner's offer, concluding that "acceptance of * * * [his] offer would not be in the best interest of the Government."  The OIC unit advised him that he could appeal the rejection to the IRS Office of Appeals (Appeals Office).  He did so on April 25, 2018.

In a letter to the Appeals Office petitioner's representative urged several grounds for review.  He contended that the OIC unit erred in determining that acceptance was not in the Government's best interest.  He urged that petitioner was then in compliance with his tax obligations.  And he urged that acceptance of the OIC would be beneficial because the Government could not collect from petitioner any more than he offered.

---

[2]Petitioner's IRS account transcript for 2012 indicates that he submitted a CDP hearing request for 2012 on September 20, 2018.  But the record does not include a copy of this hearing request, and it is unclear what relief it requested.

[*5] Petitioner's representative also questioned the income and asset figures on which the OIC unit had relied. Petitioner had worked in the insurance and financial business but changed jobs after his licenses were revoked, allegedly causing a reduction in his monthly income. He also contested the values the OIC unit had placed on certain partnership assets that he owned.

The Appeals Office took petitioner's request for review under advisement. Meanwhile, the IRS assigned petitioner's CDP case to a settlement officer (SO) in a different Appeals Office. The SO reviewed the administrative file and confirmed that petitioner's liabilities had been properly assessed and that all other legal requirements had been met. On April 16, 2018, the SO sent petitioner a letter scheduling a telephone conference for May 15, 2018, explaining that this would be his opportunity to explain why he disagreed with the collection action and to propose a collection alternative.

Petitioner did not participate in the scheduled telephone hearing. He told the SO that he was unaware of the hearing, asserting that he had never received the SO's letter. The SO agreed to reschedule the hearing for June 14, 2018.

On June 12, 2018, the Appeals Office sustained the OIC unit's rejection of petitioner's offer. While determining that petitioner's reasonable collection potential ($286,744) was close to the amount offered ($280,000), the Appeals Office

**[*6]** concluded that acceptance of his offer was not in the Government's best interest given his history of "blatant disregard for voluntary compliance." Because offer acceptance reports are available to the public under section 6103(k)(1), the Appeals Office concluded that acceptance of petitioner's OIC would "diminish future voluntary compliance."

The June 14, 2018, conference call was held as scheduled. During that call the SO informed petitioner that the Appeals Office had sustained rejection of his OIC. The SO advised that petitioner could propose a different collection alternative, such as an installment agreement. The SO indicated that a proposed installment agreement, accompanied by supporting financial documentation, would need to be submitted by June 26, 2018. Petitioner declined to make any such submission. The SO accordingly issued petitioner, on July 20, 2018, a notice of determination sustaining the NFTL filing for 2006, 2010, 2011, 2013, and 2014.[3]

On August 20, 2018, petitioner timely petitioned this Court for review. His petition purports to challenge the NFTL, not only for 2006, 2010, 2011, 2013, and

_____

[3]In an attachment to the notice of determination the SO set forth in a table the relevant tax periods and CDP notice dates. This table includes 2012, but it incorrectly identifies the lien notice for that year as having been issued on October 31, 2017. That was the date on which the IRS issued the lien notice for 2006, 2010, 2011, 2013, and 2014. The lien notice for 2012 was not issued until August 14, 2018, three weeks after the notice of determination was mailed.

[*7] 2014, but also for 2012. He alleged in his petition that the IRS improperly denied his OIC. He did not dispute his underlying liability for any year.

On July 30, 2019, respondent filed a motion to remand this case for a supplemental CDP hearing. Respondent represented that the SO did not have access to the complete "Offer in Compromise file" compiled by the OIC unit and by the Appeals Office when sustaining rejection of petitioner's OIC. We granted that motion on August 22, 2019.

After receiving the complete file the SO scheduled a supplemental hearing for January 28, 2020. During this hearing petitioner agreed in principle to a partial payment installment agreement (PPIA), under which monthly payments of $2,071 would begin on March 27, 2020. The SO mailed the PPIA to petitioner, instructing him to execute and return the agreement by March 7, 2020. Petitioner did not return the PPIA by March 7 or subsequently. Having heard nothing from petitioner, the SO proceeded to close the case. On March 26, 2020, the day before the first PPIA payment would have been due, the IRS issued petitioner a supplemental notice of determination sustaining the collection action for 2006, 2010, 2011, 2013, and 2014.

**[\*8]**   On November 10, 2020, respondent filed a motion for summary judgment. After requesting and receiving several extensions of time, petitioner filed his response on April 5, 2021.  Respondent filed a reply on May 13, 2021.

Discussion

A.    Jurisdiction

The Tax Court is a court of limited jurisdiction and may exercise jurisdiction only to the extent authorized by Congress.  See sec. 7442; Ruesch v. Commissioner, 154 T.C. 289, 294 (2020).  In a CDP case such as this, our jurisdiction depends on the issuance of a notice of determination following a timely request for a CDP hearing and the filing of a timely petition for review.  Sec. 6330(d)(1); Orum v. Commissioner, 123 T.C. 1, 8, 11-12 (2004), aff'd, 412 F.3d 819 (7th Cir. 2005).

The administrative record fails to establish that the IRS issued petitioner a notice of determination with respect to 2012.  Although the SO referenced 2012 in an attachment to the notice of determination for 2006, 2010, 2011, 2013, and 2014, the inclusion of 2012 appears to have been an error.  The attachment shows the lien notice for that year as having been issued on October 31, 2017, but the lien notice for 2012 was not in fact issued until August 14, 2018, three weeks after the notice of determination itself was mailed.  And there is no reference to petitioner's 2012 tax year anywhere in the supplemental notice of determination.  We accordingly

**[\*9]** conclude that the IRS has not yet made any determination for 2012 that would confer on this Court jurisdiction over that year.[4]

B.     Summary Judgment Standard

Our decision in this case is appealable to the U.S. Court of Appeals for the Eighth Circuit.  See sec. 7482(b)(1)(G).  That court has held that, where de novo review is not applicable, the scope of review in a CDP case is confined to the administrative record.  See Robinette v. Commissioner, 439 F.3d 455, 461 (8th Cir. 2006), rev'g 123 T.C. 85 (2004).  Petitioner has supplied no reason to believe that the administrative record in this case is incomplete.  Accordingly, in a case such as this, "summary judgment serves as a mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Belair v. Commissioner, 157 T.C. __, __ (slip op. at 11) (Aug. 2, 2021) (quoting Van Bemmelen v. Commissioner, 155 T.C. 64, 79 (2020)).

---

[4]Petitioner's 2012 account transcript indicates that he submitted a CDP hearing request for 2012 on September 20, 2018.  But the record does not include a copy of this hearing request, and it is unclear whether petitioner thereby sought a CDP hearing or an "equivalent hearing."  We normally lack jurisdiction to consider a taxpayer's challenge to the outcome of an equivalent hearing.  See Kennedy v. Commissioner, 116 T.C. 255, 263 (2001).

**[*10]** C.     <u>Standard of Review</u>

Neither section 6320(c) nor section 6330(d)(1) prescribes the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. The general parameters for such review are marked out by our precedents. Where the validity of the taxpayer's underlying liability is properly at issue, we review the IRS' determination de novo. <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000). Where the taxpayer's underlying liability is not before us, we review the IRS' decision for abuse of discretion only. <u>Id.</u> at 182. Because petitioner did not challenge his underlying tax liabilities at the CDP hearing or in his petition, our review is for abuse of discretion. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. <u>See</u> <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006).

D.     <u>Abuse of Discretion</u>

In deciding whether the SO abused his discretion in sustaining the collection action, we consider whether he: (1) properly verified that the requirements of applicable law or administrative procedure have been met, (2) considered any relevant issues petitioner raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate

[*11] concern of * * * [petitioner] that any collection action be no more intrusive than necessary." Sec. 6330(c)(3). Our review of the record establishes that the SO properly discharged all of his responsibilities under section 6330(c).

Section 7122(a) authorizes the IRS to compromise an outstanding tax liability. The statute makes clear that exercise of this authority is discretionary, providing: "The Secretary may compromise any civil or criminal case arising under the internal revenue laws." Ibid. (emphasis added). Possible grounds for compromise include doubt as to collectibility, the ground petitioner urged. See sec. 301.7122-1, Proced. & Admin. Regs. The IRS may compromise a tax liability on this basis where the taxpayer's assets and income render full collection unlikely. Id. para. (b)(2).

We do not independently assess the reasonableness of a taxpayer's proposal. Nor do we substitute our judgment for the SO's as to the acceptability of any particular offer. See, e.g., Johnson v. Commissioner, 136 T.C. 475, 488 (2011), aff'd, 502 F. App'x 1 (D.C. Cir. 2013). Rather, our review is limited to ascertaining whether the decision to reject the taxpayer's offer was arbitrary, capricious, or without sound basis in fact or law. Murphy, 125 T.C. at 320.

In urging that the IRS abused its discretion, petitioner challenges its determination that acceptance of his OIC was not in the Government's best interest. He

[*12] asserts that the IRS should have accepted his offer because it represented "97.6% of what was deemed to be collectable." Although the IRS' general policy is to accept an OIC that reflects the taxpayer's "reasonable collection potential," this is not an ironclad rule.

The Internal Revenue Manual (IRM) provides (and has long provided) that the IRS may reject an OIC if acceptance would not be in the best interest of the Government. See IRM pt. 5.8.7.7.1(1) (Dec. 20, 2018); cf. IRM pt. 5.8.7.7.2(1) (May 10, 2011). "[O]ffers may be rejected on the basis of public policy if acceptance might in any way be detrimental to the interests of fair tax administration, even though it is shown conclusively that the amount offered is greater than could be collected by any other means." See IRM pt. 5.8.7.7.2(1). Because reports of accepted OICs are publicly available, see sec. 6103(k)(1), the IRS may reject an OIC if it determines that the "public reaction to the acceptance of the offer could be so negative as to diminish future voluntary compliance," see IRM pt. 5.8.7.7.2(2).

For two decades (if not longer) petitioner failed to file returns and failed to pay the tax shown on SFRs that the IRS prepared for him. During this period he was evidently a successful practitioner in the insurance and finance business. As of 2016 his outstanding liabilities exceeded $2 million, and he offered to pay only

**[\*13]** a small fraction of these liabilities. Because of his lengthy history of ignoring his tax obligations, the Appeals Office determined that acceptance of his offer could be viewed as condoning his "blatant disregard for voluntary compliance" and that negative public reaction to acceptance of his offer could lead to "diminish[ed] future voluntary compliance" by other taxpayers.

Considering petitioner's history of noncompliance and the magnitude of his outstanding liabilities, we conclude that the Appeals Office did not act arbitrarily or capriciously in rejecting his offer. See Hauptman v. Commissioner, 831 F.3d 950, 954 (8th Cir. 2016) (holding that the taxpayer's history of noncompliance supplied an adequate basis to reject his OIC), aff'g T.C. Memo. 2014-214. Rejection of his offer was well within the guidelines set forth in the IRM. We have repeatedly held that an SO does not abuse his discretion when he adheres to published IRM collection guidelines. See Eichler v. Commissioner, 143 T.C. 30, 39 (2014); Savedoff v. Commissioner, T.C. Memo. 2020-125; Brown v. Commissioner, T.C. Memo. 2019-157.

Petitioner also contends that the SO abused his discretion "by proposing an installment agreement that exceeded over 50%" of his adjusted gross income and "by not including Schedule C expenses that would have made * * * [his] payment significantly lower." We disagree. During the supplemental hearing the SO dis-

[*14] cussed collection alternatives with petitioner, and petitioner agreed in principle to a PPIA. The terms of the agreement that the SO sent petitioner were based on the financial information he had supplied. To the extent the proposed PPIA did not accurately reflect petitioner's gross income or expenses, he could have provided relevant documentation to the SO. Instead, petitioner refused without explanation to return an executed copy of the agreement. After hearing nothing from petitioner for two months, the SO did not abuse his discretion in closing the case. See Pough v. Commissioner, 135 T.C. 344, 351 (2010) ("[I]t is not an abuse of discretion [for an SO] to move ahead if the taxpayer fails to submit the requested items."); Bullock v. Commissioner, T.C. Memo. 2017-161, 114 T.C.M. (CCH) 216, 218 ("[A]n SO is not required to negotiate with a taxpayer indefinitely.").

Finding no abuse of discretion in any respect, we will grant summary judgment for respondent and sustain the collection action for all years but 2012. We note that petitioner is free to submit to the IRS at any time, for its consideration and possible acceptance, a collection alternative in the form of an installment agreement, supported by the necessary financial information.

**[*15]** To reflect the foregoing,

<u>An appropriate order and decision will be entered for respondent</u>.